NEVADA INDUSTRIAL COMMISSION, APPELLANT,
*v.* STANLEY W. PECK AND BURTON V. WOO-
MACK, RESPONDENTS.

No. 3662

January 9, 1952.                    239 P.2d 244.

*John R. Ross,* of Carson City, and *C. E. Horton,* of Ely, for Appellant.

*Martin Scanlan,* of Reno, for Respondent Stanley W. Peck.

*Woodburn, Forman and Woodburn,* and *Gordon Thompson,* all of Reno, for Respondent Burton V. Woomack.

## OPINION

By the Court, EATHER, J.:

This is an appeal from a judgment of the district court of the State of Nevada, in and for the county of Washoe, Department No. 1, in an action tried to the court under the terms of the Nevada industrial insurance act; also from an order denying appellant's motion for a new trial. The action was instituted by Stanley W. Peck, plaintiff, for damages for personal

injuries against Burton V. Woomack and William J. Heffler, as defendants; thereafter William J. Heffler was dismissed from the action. Subsequently and pursuant to an order of the court the Nevada Industrial Commission was made a defendant in the case, and filed its pleading pursuant to such order.

Briefly stated the facts are as follows: In January, 1947, respondent Woomack was the operator of the Pioneer Hotel in the city of Reno. He had employed one William J. Heffler to install, reconstruct and encase terra cotta flues for the hotel building. Respondent Stanley W. Peck was engaged as a workman in this operation, and on January 7, 1947, was struck by a falling brick, seriously injuring him. The injury necessitated a delicate and dangerous operation on his skull, forehead and brain, which required the placing of a metal plate of tentalum, which is an element with a consistency of silver.

Woomack had regarded Heffler as an independent contractor in the doing of this work and had not reported to the Nevada Industrial Commission any of the workmen as employees of the hotel. Following his injury Peck had communicated with the commission with respect to compensation and had been advised that he was not covered inasmuch as the hotel had not reported him as an employee. He thereupon brought this action against Woomack and Heffler asking damages for negligence. After trial and submission of the matter, the trial court, on September 23, 1949, found that a complete determination of the controversy could not be had without the presence of the Nevada Industrial Commission, and ordered that the commission be made a party defendant. This having been done, the matter was retried.

Upon submission after the second trial the court found that Heffler was not an independent contractor and that Peck was an employee of Woomack; that Woomack had accepted the provisions of the Nevada industrial insurance act and that Peck had not rejected the terms of

that act as provided by the act; that the only reason why Peck had not received the benefits of the act was due to the refusal of Woomack to include the name on the payroll report to the commission and to give notice of injury.

On November 27, 1950, judgment was entered in favor of Peck decreeing that he have all the benefits of the Nevada industrial insurance act and that the Nevada Industrial Commission pay him all the benefits to which he was entitled. The court further ordered that the defendant Woomack under the name of the Pioneer Hotel file an amended payroll report for the month of December, 1946, and the month of January, 1947, showing Peck as an employee for the days he worked during those months. From this judgment and the subsequent order of the trial court denying motion for a new trial the commission has appealed.

The only question raised by this appeal is whether the fact that Woomack had never reported Peck as an employee nor any of the other workmen engaged in the installation of flues, and had confined his payroll reports to ordinary hotel employees, the premiums for whose coverage were substantially less than for workmen engaged in the installation of flues, would preclude a finding that Peck was covered under the Nevada industrial insurance act. No question is raised as to the failure to give notice of injury and no question is raised as to whether Peck was in fact an employee of Woomack.

Appellant has assigned to the trial court two errors, as follows: 1. Error in finding "that the plaintiff was covered by the provisions of the act at the time the accident occurred on January 7, 1947." 2. Error in adjudging "that the plaintiff have all the benefits under the Nevada Industrial Insurance Act for and as a result of the injuries received on the 7th day of January, 1947."

The first section to consider is section 2680, N.C.L. 1929, first paragraph: "When as in this act provided, an employer shall accept the terms of this act and be

governed by its provisions every such employer shall be *conclusively presumed to have elected* to provide, secure and pay compensation according to the terms, conditions and provisions of this act *for any and all personal injuries* by accident sustained *by an employee* arising out of and in the course of the employment. * * *" (Emphasis supplied.)

This section is subject to only one interpretation in our opinion, and that is that the act is intended to accomplish complete coverage for all employees of an employer. If the act be accepted, then under the conclusive presumption provided, it is accepted as to all employees. This would eliminate any possibility of construing an employer's conduct in failing to list an employee on his payroll or in failing to make proper segregation of employment as an intent or as demonstrating intent not to cover that employee or class of employees. The fact that in this case it can be proved that the employer did not intend to cover Peck therefore cannot be asserted against the conclusive statutory presumption.

In the case of Pershing Quicksilver Co. v. Thiers, 62 Nev. 382, 152 P.2d 432, the headnote reads:

"Employee who did not file notice of rejection of provisions of industrial insurance act was *conclusively presumed to have elected to take compensation in accordance with provisions of act.*" Comp. Laws, sec. 2680(d).

"Industrial insurance and workmen's compensation acts have for their purpose the putting of an end to private litigation between employer and employee, and give to a workman the right to compensation for injuries suffered in employment, regardless of negligence of employer." Comp. Laws, sec. 2680, et seq.

"Where an injury is compensable under industrial insurance act and injured workman accepts provisions of act, workman cannot choose as to whether he will sue at common law or accept compensation under act, and

his exclusive remedy is under act." Comp. Laws, secs. 2680, 2683, 2704, 2706, * * *. (Emphasis supplied.)

The only question remaining, therefore, is whether by his conduct the employer is to be deemed to have rejected the provisions of the act. The industrial commission apparently takes the position that this was done at least so far as concerned Peck or so far as concerned all employees of Woomack who did not fall within the general classification of hotel employees. However, under our views with respect to the quoted portion of sec. 2680, it would not be possible to accept the act in part. If the employer by his conduct rejected the terms of the act it was rejected in toto and would result in a lack of coverage for any employee of Woomack whether that employee had been reported or not.

In this connection we are concerned with the language of sections 2680 and 2702. Sec. 2680 provides, "failure on the part of any such employer to pay the premiums as by the provisions of this act required shall operate as a rejection of the terms of the act." Section 2702 provides "failure on the part of any such employer to comply with the foregoing provisions shall operate as a rejection of this act. * * *" It is to be noted that in each instance the rejection is not partial but is a complete *rejection of the act* or of *its terms* and could only accomplish the result that the employer was in the same position he would occupy had he failed to accept the terms of the act originally.

"Sec. 2702. Sec. 21. * * * Every employer electing to be governed by the provisions of this act, who shall enter into business or resume operations subsequent to July 1, 1925, shall, before commencing or resuming operations, as the case may be, notify the commission of such fact, accompanying such notification with an *estimate* of his monthly pay-roll and shall make payment of the premium on such pay-roll for the first two months of operations.

"Every employer electing to be governed by the provisions of the act shall, on or before the twenty-fifth day of each month, furnish the Nevada industrial commission with a true and accurate pay-roll showing the aggregate number of shifts worked during the preceding months, the total amount paid to employees for services performed during said month, and a segregation of employment in accordance with the requirements of the commission, together with the premium due thereon; *provided, however,* that any employer, by agreement in writing with the commission, may arrange for the payment of premiums in advance for a period of more than sixty days. *Failure* on the part of any such employer to comply with the foregoing provisions shall operate as a rejection of this act, effective at the *expiration of the period covered by his estimate; and further provided,* that if an audit of the accounts or actual pay-roll of such employer shows the actual premium earned to have exceeded the estimated advance premium paid, the commission may require the payment of a *sum sufficient* to cover *such deficit,* together with such amount as in its judgment would constitute an adequate advance premium for the period covered by the estimate. * * *" (Emphasis supplied.)

The "foregoing provisions" referred to in sec. 2702 are: (1) payment of the premiums, and (2) the filing of a "true and accurate payroll" with the showing of facts as specified in that section.

It is contended by the commission that failure on the part of an employer to list an employee upon his payroll would have the effect of his failure to pay premiums as to that employee and that this failure or neglect upon the employer's part would therefore result in a rejection as to such employee under the terms of both sections 2680 and 2702. However, under the provisions of sec. 2702 the premiums which are to be paid are: (1) those to be paid for two months in advance pursuant to the *employer's own estimate,* (2) those payable on filing the

payrolls, and (3) those payable pursuant to commission demand after audit by the commission of the "true and accurate payroll" submitted by the employer. Nowhere is there any requirement that premiums be paid otherwise than as there specified. Should an employer misrepresent the extent of his payroll as submitted he would still have paid the premiums required by the provisions of the act and if he be in default in any regard under the terms of the act it would not be a default in payment of premiums required.

The commission contends that failure to include an employee upon the payroll renders that payroll not a true and accurate one and would result, therefore, in a failure on the part of the employer to comply with the essential provision of the section for the filing of such a payroll. This raises the question as to whether the filing of a payroll which, as a matter of fact, is not true and accurate would operate as an automatic rejection. In our view, this is not the interpretation to be placed upon this section.

Sec. 2718, N.C.L., provides for the consequences of misrepresentation by an employer, as follows:

"Sec. 2718. Sec. 36. Any employer who shall misrepresent to the department the amount of pay-roll upon which the premium under this act is based shall be liable to the Nevada industrial commission in ten times the amount of the difference in premium paid and the amount the employer should have paid. The liability to the Nevada industrial commission shall be enforced in a civil action in the name of the Nevada industrial commission. All sums collected under this section shall be paid into the accident fund."

Under the terms of this section the employer's liability for misrepresentation is a money liability to the commission and is not an automatic rejection.

Sec. 2702, then, should be construed to read: "[the employer shall] furnish the Nevada industrial commission with a * * * payroll [which he shall, subject to

the liability provided by sec. 2718, represent to be a true and accurate payroll] showing, etc."

In our view the only alternative to such an interpretation would be to hold that every untruth or inaccuracy contained in a payroll would accomplish a complete automatic rejection by the employer. Under our interpretation of the first paragraph of sec. 2680, as we have quoted it, there would be no room under the act's language to hold that the act is rejected only as to the employees who are not reported. The employer has either accepted or rejected *the act* in its entirety.

Certainly the legislature cannot have intended such a harsh result to follow from inaccuracies in the payroll. Had it intended partial rejection to follow from the elimination of an employee's name it would have been extremely simple for the legislature so to provide expressly and clearly.

The commission argues that under such interpretation the commission would be unduly burdened with the task of auditing and policing its accounts; that the provisions of sec. 2718 do not adequately protect the commission against deliberate fraud on the part of the employers. Our problem in this respect remains one of statutory construction and the ascertaining of legislative intent. Can it be said that the burden placed upon the commission of auditing and policing its accounts to prevent the fraudulent misrepresentation of payrolls is so great a burden that the legislature cannot be deemed to have intended the provisions of sec. 2718 to be the full consequences of the filing of a false payroll? In our opinion the burdens are not so great as to result in such a construction. The Nevada industrial insurance act differs from the acts of most states providing workmen's compensation. Under the more usual form of act the insurance is written by private carriers and the form of contract there provided grants full coverage to all employees injured in the course of their employment. Under such an act the burden of auditing and policing

is absorbed by the carrier in the premium which it charges. Failure to file an accurate payroll under such circumstances is no defense to the insurance company's obligation to provide compensation. Certainly, if under such an act the private insurance company can assume the burden of auditing and policing its accounts there is no reason why the legislature of this state could not assume that the industrial commission could assume a similar burden. To hold otherwise would be to hold that the Nevada Industrial Commission cannot be expected to act with the same degree of efficiency as a private insurance carrier, and also would be to assume an intent on the part of the legislature to provide a workmen's compensation act which does not provide the same degree of employee coverage as other types of acts in existence in other states. We do not feel that such an intent in either respect can be attributed to the legislature.

The commission argues that failure of an employer to make the segregation of employment required by the act with the result that no employee in the particular class of employment is reported upon the payroll, results in the employer's failure to accept the act as to that classification of employee. Again we refer to our construction of the first paragraph of sec. 2680. Regardless of the classification, all employees are conclusively presumed to be covered by their employer's acceptance of the act. In the absence of any rejection of the act by the employer the only question would be whether the employee was in fact an employee under the definition of the term contained in sec. 2688. Under that section the only exception to the general definition: "Every person in the service of an employer," is a person "whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer." It is conceded that Peck's employment was not "casual" within the meaning of the act.

Unquestionably, compensation laws were enacted as a

humanitarian measure. The modern trend is to construe the industrial insurance acts broadly and liberally, to protect the interest of the injured worker and his dependents. A reasonable, liberal and practical construction is preferable to a narrow one, since these acts are enacted for the purpose of giving compensation, not for the denial thereof.

"The Workmen's Compensation Act, including matters of procedure, is liberally construed, having due regard to remedial and salutary purposes of the act."

Nevada Industrial Commission v. Adair, 67 Nev. 259, 217 P.2d. 348.

See, also: Costley v. Nevada Industrial Commission, 53 Nev. 219, 296 P. 1011; Virden v. Smith, 46 Nev. 208, 210 P. 129; English v. Industrial Commission, et al., (Arizona) 237 P.2d 815.

We have carefully considered the assignments of error and find them to be without merit.

We think the district court reached a correct result in this case, and finding no error in the record, the judgment and order appealed from are affirmed.

BADT, C. J., and MERRILL, J., concur.