NEVADA INDUSTRIAL COMMISSION, APPELLANT, *v.* FORREST M. BIBB, GUARDIAN AD LITEM FOR JOHN STEPHEN BIBB, RESPONDENT.

No. 4507

September 18, 1962          374 P.2d 531

*William J. Crowell,* of Carson City, for Appellant.

*Gordon W. Rice,* of Reno, for Respondent.

## OPINION

By the Court, MCNAMEE, J.:

This is an appeal from a judgment awarding Bibb, a minor, compensation and benefits under the Nevada Industrial Insurance Act.

Matters pertaining to this case have had the consideration of this court twice before. In Reno Newspapers, Inc. v. Bibb, 76 Nev. 332, 353 P.2d 458, the appeal of Reno Newspapers, Inc., was dismissed for procedural reasons. In Nevada Industrial Commission v. Bibb, 77 Nev. 8, 358 P.2d 360, the judgment against the Commission was reversed for the reason that it was based on a concession which could not bind the Commission, as it was made by an attorney who was not acting on behalf of the Commission. In the latter appeal we stated that an important legal question to be determined concerned the status of Bibb resulting from the nature of his relationship with the Newspaper.

In the court below the action was dismissed as to all defendants other than the Nevada Industrial Commission and was then submitted to the court for decision on the following agreed statement of facts.

On October 3, 1957, while he was acting as a carrier newsboy for Reno Newspapers, Inc., Bibb was injured by an automobile driven by Marilyn Wright. Prior to October 3, 1957, and when he was 16 years old, John Stephen Bibb entered into an agreement with Reno Newspapers, Inc., whereby Bibb became the "newsboy" to carry and deliver the Nevada State Journal to the subscribers living along a certain route in Reno, Nevada. The boy's mother agreed to be responsible for the boy's performance of the contract. Reno Newspapers, Inc., had accepted the provisions of the Industrial Insurance Act without specifically mentioning Bibb or any newsboy operating under the same type of contract as Bibb.[1] On January 15, 1958,[2] Bibb entered into a written contract with the Nevada State Journal, owned and operated by Reno Newspapers, Inc. This contract recited that Bibb had received a list of subscribers who purchase the Nevada State Journal and who live on a certain paper route in Reno, and provided that Bibb would:

(1) Sell and regularly and promptly deliver the Nevada State Journal to all of said subscribers, at the established rate therefor;

(2A) Not sell or deliver any other newspapers to any person without the written consent of the Nevada State Journal;

(2B) Not sell or deliver in, or along with the Nevada State Journal, any other material, notice or printed matter, without the written consent of the Nevada State Journal;

(3) Do all in his power to promote and extend the circulation of the Nevada State Journal;

(4) Prior to giving up said paper route give the Nevada State Journal two weeks' notice of his intention so to do;

(5) Not turn over said list of subscribers to any person or disclose the name of any subscriber for the

---

[1] The failure to mention Bibb after accepting the provisions of the act is without significance. Nevada Industrial Commission v. Peck, 69 Nev. 1, 239 P.2d 244.

[2] This apparently erroneous date is explained in footnote 4.

Nevada State Journal without first obtaining the consent of the Nevada State Journal;

(6) Regularly and promptly pay each Thursday for all copies of the Nevada State Journal sent to him in accordance with his orders, at the established wholesale rate.

The contract further recited that Bibb had not paid any money to any person for the list of subscribers and that he would not sell it to any person or persons for any money; would not collect in advance from any of his subcribers, and should he do so he would become responsible for any amount under his bond and deposit. It gave the Nevada State Journal the power of cancellation without liability and the right to discharge Bibb at any time for good and sufficient reason,[3] and if cancelled Bibb agreed to turn over forthwith to the Nevada State Journal the names of all subscribers to whom he had been delivering the newspaper, and he agreed to keep a written list of all such persons with their street addresses and that such written list would be the property of the Nevada State Journal.

The contract also recited that Bibb desired to participate in the Nevada State Journal plan of newspaper-boy insurance protection and authorized the Newspaper to add $1.00 per month to the first billing of every month for this purpose, the insurance to cover every kind of accidental bodily injury, day or night, at home or school, work or play.

It was stipulated by the appellant and respondent in the court below that the deposition of Bibb taken on November 27, 1959, his affidavit in opposition to the motion for summary judgment, and the affidavit of Clarence K. Jones in support of the motion for summary judgment could be considered in evidence as part of the agreed statement of facts.

It appears in the said Bibb deposition that he had

---

[3]Bibb's affidavit, hereinafter referred to, states that he was always led to believe that if he did not service his route in accordance with the numerous written suggestions and requirements made from time to time as to details, methods and procedure his employment would be terminated.

worked approximately two years for Reno Newspapers, Inc. The affidavit of Clarence K. Jones states that the Newspaper did not deduct social security or withholding taxes from Bibb's earnings; that it did not pay him wages; and that it exercised no more control over him than that specified in the written contract. Bibb's affidavit denies that he always acted only in accord with the terms of the said written contract and states that during all of his employment he was operating partially under contracts similar to the January 15, 1958 contract;[4] that in addition to the specifications of the written contract he was required: (1) to deliver to the subscribers not later than 7:00 a.m. each morning about 80 newspapers; (2) to collect from subscribers once each week 40¢, of which he gave 29¢ to the Newspaper; (3) to obtain new subscribers on his route by distributing advertising material and offering prizes furnished by the Newspaper as an inducement; and (4) to refrain from making street sales of the newspaper.

The trial court determined from the agreed statement of facts and from the evidence submitted on stipulation that Bibb was entitled to compensation and benefits under the Nevada Industrial Insurance Act, regardless of whether his status was that of an employee or of an independent contractor under said contract.

NRS 616.270 allows compensation for personal injuries by accident sustained by an employee, subject to the provisions of the act, arising out of and in the course of his employment.

NRS 616.055 provides that the word "employee" shall be construed to mean every person including minors in

---

[4]The record on appeal is confusing because the contract in the record is dated January 15, 1958, while the record elsewhere refers to the written contract as having been executed prior to October 3, 1957. Also, the record gives both October 3, 1957 and October 3, 1958 as the date of the accident. Bibb's affidavit recites that the contract of January 15, 1958 was in effect when he was injured. The court's formal findings of fact state: "The agreement under which Bibb was operating on the 3rd day of October, 1957, contained the same words and figures as the agreement signed on the 15th day of January, 1958." Accordingly, the discrepancy in dates is immaterial.

the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed.

NRS 616.060 excludes from the category of employee any person whose work is not in the course of the "trade, business, profession or occupation of his employer."

NRS 616.120 provides that "trade, business, profession or occupation of his employer" includes all services tending toward the preservation, maintenance or operation of the business, business premises or business property of the employer.

NRS 616.105 defines an independent contractor as "any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

In determining whether an individual is an employee entitled to compensation under workmen's compensation acts, one test is that of control. Barrett v. Selden-Breck Const. Co., 103 Neb. 850, 174 N.W. 866. If he is subject to the control, supervision, or authority of the person for whom the work is done, his status is that of an employee within the meaning of such statutes. Industrial Commission v. Navajo County, 64 Ariz. 172, 167 P.2d 113. Indeed lack of control is not always conclusive. Hannigan v. Goldfarb, 53 N.J.Super. 190, 147 A.2d 56; see Simon Service Incorporated v. Mitchell, 73 Nev. 9, 307 P.2d 110.

The contract of January 15, 1959 and the Bibb affidavit delineated the relationship between Bibb and the Newspaper. The Newspaper, among other things, controlled Bibb's hours of work, his place of work, the nature of his work, the amount of work to be done, the right to discharge without liability, the furnishing of supplies (newspapers), the sales price thereof, and the compensation Bibb was to receive.

Under said statutory provisions it is clear to us that

respondent Bibb at the time of his injuries was an employee of Reno Newspapers, Inc., and that his injuries arose out of and in the course of his employment. Bigger v. Consolidated Underwriters, Tex.Civ.App., 315 S.W.2d 681; Elder v. Aetna Cas. & Surety Co., 149 Tex. 620, 236 S.W.2d 611; Havens v. Natchez Times Pub. Co., 238 Miss. 121, 117 So.2d 706; Laurel Daily Leader v. James, 224 Miss. 654, 80 So.2d 770. See also Salt Lake Tribune Pub. Co. v. Industrial Commission, 99 Utah 259, 102 P.2d 307.

Cases where a newspaper vendor sells papers on the street for a profit, such as New York Indemnity Co. v. Industrial Accident Commission, 213 Cal. 43, 1 P.2d 12, are clearly distinguishable. Hann v. Times-Dispatch Pub. Co., 166 Va. 102, 184 S.E. 183, 185; Hampton v. Macon News Printing Co., 64 Ga.App. 150, 12 S.E.2d 425, 430. Cases involving liability of an alleged employer to a third person injured by the negligence of an alleged employee where the doctrine of respondeat superior is not always applied—as in Batt v. San Diego Sun Pub. Co., 21 Cal.App.2d 429, 69 P.2d 216; Bohanon v. James McClatchy Pub. Co., 16 Cal.App.2d 188, 60 P.2d 510; and Skidmore v. Haggard, 341 Mo. 837, 110 S.W.2d 726—are also distinguishable. As noted in Heidtman v. Nevada Ind. Commission, 78 Nev. 25, 368 P.2d 763, such cases rest upon a rationale entirely different from that in workmen's compensation cases. See dissenting opinion of Mr. Justice Smith in Powell v. Appeal Board, 345 Mich. 455, 75 N.W.2d 874.

In so far as the contract under which Bibb worked purported to change Bibb's status from that of a person entitled to compensation under the Nevada Industrial Act, it was void. NRS 616.265.

Respondent has filed a motion to strike appellant's reply brief upon the ground that it contains matters which more properly should have been contained in appellant's opening brief. We have considered the reply brief insofar as it responds to the answering brief and have disregarded the new matters contained therein.

Schatz v. Devitte, 75 Nev. 124, 335 P.2d 783; Blouin v. Blouin, 67 Nev. 341, 218 P.2d 937; In re Benson's Estate, 62 Nev. 376, 151 P.2d 762.

Judgment is affirmed and the motion to strike is denied.

BADT, C. J., and THOMPSON, J., concur.