731 F.2d 1388
 Keith L. PRESCOTT, Plaintiff-Respondent,
v.
UNITED STATES of America, Defendant-Petitioner.
Keith L. PRESCOTT, Plaintiff-Respondent-Appellee,
v.
UNITED STATES of America, et al., Defendants,
and
Reynolds Electrical and Engineering Company, Inc., a Nevada
Corporation, Defendant-Petitioner-Appellant.
 Nos. 83-1948, 83-1949.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 15, 1984.
Decided April 25, 1984.
 
 Stewart L. Udall, Phoenix, Ariz., Larry C. Johns, Alan R. Johns, Johns & Johns, Las Vegas, Nev., for plaintiff-respondent-appellee.
 J. Paul McGrath, Asst. Atty. Gen., Jeffrey Axelrad, Director, Torts Branch, Donald E. Jose, Asst. Director, Torts Branch, Washington, D.C., John Thorndal, Thorndal, Backus & Maupin, Las Vegas, Nev., for defendant-petitioner-appellant.
 Appeal from the United States District Court for the District of Nevada.
 Before DUNIWAY, FARRIS, and PREGERSON, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 The question certified for this interlocutory appeal is whether an agreement between the Atomic Energy Commission and the Nevada Industrial Commission is a valid device for providing workers' compensation coverage for radiation-related injuries and diseases for the employees of Reynolds Electrical and Engineering Company. The district court held that the agreement was not a valid device because it failed to meet the requirements of the Nevada Industrial Insurance Act and the Nevada Occupational Diseases Act. We affirm.
 
 FACTS
 
 2
 The United States, through the Atomic Energy Commission and other agencies, has tested nuclear weapons and nuclear devices at the Nevada Test Site since the early 1950's. Reynolds Electrical and Engineering Company is a contractor at the Nevada Test Site. From 1961 to 1968, Reynolds employed Prescott as an operating engineer. Prescott alleges that he was exposed to radiation when he was regularly sent into highly contaminated test areas immediately after nuclear detonations to retrieve test instruments. In 1969, he was diagnosed as having multiple myeloma, a cancer of the bone marrow. Prescott brought tort actions against Reynolds and the United States, alleging that he contracted the disease as a result of exposure to radiation while employed at the Nevada Test Site.
 
 
 3
 Reynolds and the Atomic Energy Commission had agreed that Reynolds would provide insurance coverage for its employees under the Nevada Industrial Insurance Act and the Nevada Occupational Diseases Act and would pass the insurance costs on to the United States. Although employers typically purchase such insurance by paying premiums to the state insurance fund, Reynolds has not paid any premiums to purchase insurance for employees who suffer radiation-related harm. Instead, in 1956, the Atomic Energy Commission and the Nevada Industrial Commission entered into an agreement which was intended to provide coverage for radiation-related diseases and injuries for employees of Reynolds and other contractors and subcontractors at the Nevada Test Site. The agreement provided that when an employee filed a claim, the Nevada Industrial Commission would determine if the claim was compensable under Nevada workers' compensation laws. If compensable, the Nevada Industrial Commission would make payments to the employee for injuries, disabilities or death resulting from work-related radiation exposure. The Atomic Energy Commission promised to reimburse the Nevada Industrial Commission for payments made to employees. This agreement has been extended and modified nine times since 1956, but the substance of the agreement remains unchanged. The Department of Energy has since assumed the responsibilities of the Atomic Energy Commission.
 
 
 4
 In 1979, Prescott filed a claim with the Department of Energy. When no action was taken on the claim, Prescott sued Reynolds and the United States in tort. Reynolds and the United States moved to dismiss Prescott's suit, arguing that the Nevada Industrial Insurance Act and the Nevada Occupational Diseases Act provided his exclusive remedy. The district court held that the agreement between the Atomic Energy Commission and the Nevada Industrial Commission failed to satisfy the defendants' obligations to provide coverage under the acts. Prescott v. United States, 523 F.Supp. 918 (D.Nev.1981). The district court held that the agreement was void because the Nevada Industrial Commission lacked authority to enter into the agreement and because the agreement impermissibly modified the terms of defendants' liabilities created by the Nevada Occupational Diseases Act. The court concluded that since no workers' compensation insurance had been purchased, Prescott could sue Reynolds and the United States in tort. On motion for reconsideration, the district court held that no premiums had been paid to purchase coverage for radiation-related diseases. Prescott v. United States, No. 80-143 (D.Nev. Mar. 28, 1983). The court again concluded that since Reynolds had not purchased insurance, Prescott could sue the defendants in tort. Pursuant to 28 U.S.C. Sec. 1292(b), the district court certified for interlocutory appeal the question of the validity of the agreement between the Atomic Energy Commission and the Nevada Industrial Commission.
 
 ANALYSIS
 
 5
 In determining the liability of Reynolds and the United States, the district court interpreted Nevada law. We recently granted rehearing en banc to decide whether a "clearly wrong" or a de novo standard applies when reviewing a district court's determination of the law of the state in which it sits. See In re McLinn, F/V Fjord, 721 F.2d 666 (9th Cir. rehearing en banc granted Dec. 6, 1983). Under either standard, we affirm.
 
 PLEDGE OF ASSETS
 
 6
 The Nevada Industrial Insurance Act requires that employers pay to the state insurance fund premiums in the form of advance deposits.[1] It is undisputed that Reynolds did not contribute to the fund to cover the payment of benefits to employees for work-related radiation injuries and diseases. Reynolds and the United States argue instead that the agreement between the Atomic Energy Commission and the Nevada Industrial Commission satisfied Reynolds' obligation under the Nevada Industrial Insurance Act. Nev.Rev.Stat. Sec. 616.395(3) permits the state industrial insurance system to accept as a substitute for premiums a "bond or pledge of assets."[2] The district court held that the agreement between the Atomic Energy Commission and the Nevada Industrial Commission is not a pledge of assets within the meaning of Nev.Rev.Stat. Sec. 616.395(3).
 
 
 7
 The Nevada Industrial Insurance Act does not define "pledge of assets." Nevada courts have not defined the term. The sparse legislative history provides no guidance. We must therefore look to other sources to determine whether the agreement qualifies as a "pledge of assets."
 
 
 8
 The Restatement defines a "pledge" as "a security interest in a chattel or in an intangible represented by an indispensable instrument, the interest being created by a bailment for the purpose of securing the payment of a debt or the performance of some other duty." RESTATEMENT OF SECURITY Sec. 1 (1941). The essential elements of a common-law pledge are: 1) the existence of a debt or obligation and 2) the transfer of property to the pledgee, to be held as security and, if necessary, to be used to assure performance of the obligation. See, e.g., Madsen v. Prudential Federal Savings & Loan Ass'n., 558 P.2d 1337, 1339 (Utah 1977). The pledgee takes possession of the pledged property and has a right to retain the property until the debt is satisfied. See Ahlswede v. Schoneveld, 87 Nev. 449, 488 P.2d 908, 910 (1971); Campbell v. Peter, 108 Utah 565, 162 P.2d 754, 755 (1945).
 
 
 9
 Reynolds and the government argue that the term "pledge" can signify a promise. However, we reject their argument that the Nevada Legislature intended that a promise to reimburse would satisfy the "pledge of assets" requirement of Nev.Rev.Stat. Sec. 616.395(3). That argument conflicts with the well established case law which provides that a pledge requires a transfer of property and possession by the pledgee. See e.g., Lincoln National Bank v. Herber, 604 F.2d 1038, 1040 (7th Cir.1979); Madsen v. Prudential Federal Savings & Loan Ass'n, supra. Additionally, the primary definition of "pledge" is a "bailment or delivery of goods or property by way of security for a debt or engagement, or as security for the performance of an act." BLACK'S LAW DICTIONARY 1038 (5th Ed.1979). Under this definition, a transfer is required; a promise to reimburse is insufficient. The defendants have not presented any evidence to show that this primary definition of "pledge" was not the intended one. See Maine v. Thiboutot, 448 U.S. 1, 4, 8, 100 S.Ct. 2502, 2504, 2506, 65 L.Ed.2d 555 (1980). Finally, the Nevada Industrial Insurance Act itself refers to the "amount and sufficiency of security " that an employer must provide. Nev.Rev.Stat. Sec. 616.395(3) (emphasis supplied). This reference to "security" indicates that an employer is required to provide something more than a mere promise.
 
 
 10
 The government's promise to reimburse is at best a conditional promise. Article 4.c. of the agreement provides that "all reimbursements to the NIC by the AEC under this Article shall be subject to the availability of appropriations therefor." Thus, the Atomic Energy Commission expressly promised to reimburse the Nevada Industrial Commission only to the extent that money had been appropriated for that purpose.
 
 
 11
 Moreover, the procedures outlined in the agreement render such reimbursement contingent on several occurrences. The agreement provides that the Atomic Energy Commission will reimburse the Nevada Industrial Commission only if the Atomic Energy Commission agrees that a claimant's award was justified. If it disagrees, the Atomic Energy Commission and the Nevada Industrial Commission may submit the dispute to arbitration. If the arbitrator rules that reimbursement is required, the agreement permits the Atomic Energy Commission to seek a de novo determination in a court of law. Thus, there are substantial barriers to the Atomic Energy Commission's reimbursement of payments made by the Nevada Industrial Commission. The Nevada Legislature did not intend for this conditional promise to qualify as a "pledge of assets." We agree with the district court's conclusion that the agreement fails to satisfy the requirements of Nev.Rev.Stat. 616.395(3).
 
 AUTHORITY TO ENTER INTO AGREEMENT
 
 12
 Reynolds and the government attempt to justify the failure to meet the statutory requirements by asserting that the Nevada Industrial Commission possessed extraordinary authority to enter into the agreement with the Atomic Energy Commission to provide coverage for employees. They argue that because of the difficulties of devising a manageable premium and rate structure, the agreement was a permissible alternative to the statutorily mandated method of providing coverage.
 
 
 13
 The Nevada Industrial Commission's powers are limited to those powers enumerated in the Nevada Occupational Diseases Act and the Nevada Industrial Insurance Act. See Andrews v. Nevada State Board of Cosmetology, 86 Nev. 207, 467 P.2d 96 (1970). It has only those powers that the Nevada Legislature has conferred on it expressly or by implication. Id. In Andrews, the Nevada Supreme Court held that without a specific grant of power by the legislature, the Nevada State Board of Cosmetology could not issue subpoenas to require the attendance of witnesses at hearings. Here, the Nevada Legislature has not expressly conferred on the Nevada Industrial Commission the power to enter into a reimbursement agreement and no such power may be implied.
 
 
 14
 Reynolds cites Nevada Industrial Commission v. Reese, 93 Nev. 115, 560 P.2d 1352 (1977), for the proposition that the Nevada Industrial Commission has extremely broad authority when administering the Nevada Industrial Insurance Act and the Nevada Occupational Diseases Act. This reliance is misplaced. In Reese, a plurality of the Nevada Supreme Court held that the exercise of quasi-judicial powers by an Appeals Officer of the Nevada Industrial Commission did not violate the separation of powers doctrine. The plurality opinion addressed the question of separation of powers; it did not address the question of express or implied authority.
 
 
 15
 Reynolds also argues that Nev.Rev.Stat. Sec. 616.223(2), which authorizes the Nevada Industrial Commission to enter into cooperative agreements with other public agencies, confers such power on the Commission. This provision is inapplicable. The title of Nev.Rev.Stat. Sec. 616.223 is "Cooperative agreements to provide services to claimants and other patients." As the title indicates, Nev.Rev.Stat. Sec. 616.223(2) authorizes the Nevada Industrial Commission to enter into agreements to provide services and other assistance to disabled employees. It has no bearing on the Commission's authority to enter into an agreement to provide insurance coverage for employees.
 
 
 16
 The government argues that the agreement is merely a "form of rating system" authorized by Nev.Rev.Stat. Sec. 616.380(1). Even if we were to accept the government's questionable characterization of the agreement, Nev.Rev.Stat. Sec. 616.380(1) does not exempt employers from the statutory requirement of paying premiums or pledging assets under Nev.Rev.Stat. Secs. 616.395(1) and (3). Nev.Rev.Stat. Sec. 616.380(1) simply does not authorize the Nevada Industrial Commission to enter into the agreement.
 
 
 17
 In holding that the Nevada Industrial Commission had no authority to enter into the agreement, the district court relied in part on Nevada Attorney General Opinions. In Op. Att'y Gen. No. 64-119 (1964), the Nevada Industrial Commission had sought to enter into a cooperative agreement with the Nevada State Board for Vocational Education to provide rehabilitation services for disabled workers. The Nevada Attorney General stated that the Commission had no authority to enter into the agreement because no provision of Chapter 616 of the Nevada Industrial Act delegated to the Commission the power to enter into agreements with other agencies for rehabilitation purposes. The Attorney General said, "It is a general rule that commissions and boards have only such powers as are specifically delegated to them by law or which may be reasonably implied therein." Id.
 
 
 18
 Although Attorney General opinions are not binding, they are entitled to great weight. See Harris County Commissioners Court v. Moore, 420 U.S. 77, 87 n. 10, 95 S.Ct. 870, 877 n. 10, 43 L.Ed.2d 32 (1975); Moore v. Panish, 32 Cal.3d 535, 544, 186 Cal.Rptr. 475, 480, 652 P.2d 32, 37 (1982). The present case is similar to the situation in Op.Att'y Gen. No. 64-119. Although the Nevada Industrial Insurance Act and the Nevada Occupational Diseases Act confer broad power on the Nevada Industrial Commission, they do not authorize the Commission to enter into a reimbursement agreement as a substitute for the payment of premiums or the pledge of assets. The defendants have cited no authority which confers such power upon the Commission. Because it lacked authority, the Nevada Industrial Commission's agreement with the Atomic Energy Commission is void. See Washington v. Penwell, 700 F.2d 570, 573 (9th Cir.1983).
 
 
 19
 Reynolds and the government rely heavily on Op.Att'y Gen. No. 64-165 (1964). There, the Attorney General said that although no premiums to the state insurance fund had been paid for three years, the Nevada Industrial Commission could not refuse insurance coverage to members of the Eldorado Valley Advisory Group. The Nevada Legislature had required that the members be covered, determined how premiums would be paid, initially authorized appropriations for the payment of premiums, but later failed to appropriate funds for the continued payment of premiums. Faced with this unique situation, the Attorney General concluded that there was a "legislative mandate" for Board members to have continuous coverage notwithstanding the three year lapse in the payment of premiums. In the present case, no such legislative mandate may be inferred. The Nevada Legislature never authorized this type of agreement to serve as a permissible method of providing insurance coverage under the Nevada Industrial Insurance Act or Nevada Occupational Diseases Act.
 
 
 20
 The defendants' final argument is that the policies underlying the Nevada Industrial Insurance Act and the Nevada Occupational Diseases Act require us to find that the agreement is a permissible method of providing insurance coverage to employees. We recognize that Nevada courts construe these acts broadly and liberally. See Antonini v. Hanna Industries, 94 Nev. 12, 573 P.2d 1184, 1186 (1978); Nevada Industrial Commission v. Bibb, 78 Nev. 377, 374 P.2d 531 (1962). These acts are to be construed to benefit injured workers, Nevada Industrial Commission v. Peck, 69 Nev. 1, 239 P.2d 244, 248 (1952), and to protect employers from common-law tort actions. Antonini v. Hanna Industries. Even under a broad and liberal reading, neither the Nevada Industrial Insurance Act nor the Nevada Occupational Diseases Act authorizes the Nevada Industrial Commission to enter into the agreement with the Atomic Energy Commission:
 
 
 21
 [A] rule of liberal construction ... does not permit the reading into the act of something new and different than what the Legislature saw fit to provide. We feel that the powers given the Industrial Insurance Board as set forth in the statutes are exclusive.
 
 
 22
 Op.Att'y Gen. No. 64-119 (1964).
 
 
 23
 Prescott argues, and the district court held, that the agreement was void pursuant to Nev.Rev.Stat. Sec. 617.190 as a device waiving the terms of liability of the Atomic Energy Commission and its contractors under the Nevada Occupational Diseases Act. Since we conclude that the agreement failed to satisfy the "pledge of assets" requirement and that the agreement is void because the Nevada Industrial Commission lacked the authority to enter into the agreement, we need not reach this issue.
 
 
 24
 In holding that the agreement fails to meet the requirements of the Nevada Industrial Insurance Act and the Nevada Occupational Diseases Act, we express no opinion on the other issues addressed by the district court.
 
 
 
 [1]
 Nev.Rev.Stat. Sec. 616.395(1) provides:
 Except for a self-insured employer, every employer within, and those electing to be governed by, the provisions of this chapter ... shall pay to the state insurance fund, premiums in the form of an advance deposit as fixed by order of the manager [of the state industrial insurance system].
 
 
 [2]
 Nev.Rev.Stat. Sec. 616.395(3) provides:
 The system may accept as a substitute for payment of premiums either a bond or pledge of assets. The amount and sufficiency of security required, other than cash, must be determined by the manager [of the state industrial insurance system] but must not be of a value less than the amount of cash required by this section.