The BUILDING AND CONSTRUCTION TRADES DEPARTMENT, AFL–CIO, The Colorado Building and Construction Trades Council, Patrick F. Kelly and Virgil A. Owen, individually, and as representatives of a class of all former employees of the Rocky Flats Nuclear Weapons Plant, and John M. Amador, Jack D. Bloom, and Roger Saxton, individually, and as representatives of a class of the members of The Colorado Building and Construction Trades Council, Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION, a Delaware corporation, and The Dow Chemical Company, a Delaware corporation, Defendants.

Civ. A. No. 90–B–180.

United States District Court, D. Colorado.

Jan. 30, 1991.

Bruce H. DeBoskey, Steven W. Kelly, Silver & DeBoskey, P.C., Denver, Colo., Ronald Simon, David Elbaor, Richard J. Fiesta, Connerton, Ray and Simon, Washington, D.C., Merrill Davidoff, Berger & Montague, P.C., Philadelphia, Pa., Robert Golten, Fredericks & Pelcyger, Boulder, Colo., Stanley M. Chesley, Waite, Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, Ohio, for plaintiffs.

Joseph J. Bronesky, Christopher Lane, Sherman & Howard, Denver, Colo., John D. Aldock, James R. Bird, Michael S. Giannotto, Shea & Gardner, Washington, D.C., for defendant Rockwell Intern. Corp.

Mark S. Lillie, John A. DeSisto, Kirkland & Ellis, Denver, Colo., David M. Bernick, Kevin T. Van Wart, Kirkland & Ellis, Chicago, Ill., for defendant Dow Chemical Co.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants Rockwell International Corporation (Rockwell) and Dow Chemical Company (Dow) are past operators of the Rocky Flats Nuclear Weapons Plant (Rocky Flats) in Colorado. Plaintiffs are former employees of Dow or Rockwell and labor unions whose members work at Rocky Flats. Before me are defendants' motions to dismiss. Defendants contend

that plaintiffs' claims are subject to the exclusivity provisions of Colorado's Workmen's Compensation Act. Because matters outside the pleadings have been considered, these motions are treated as motions for summary judgment. *See* Fed.R.Civ.P. 12(b)(6). For the reasons stated below these motions are granted.

## I.

Plaintiffs are individuals who work or have worked at Rocky Flats and labor unions whose members work at Rocky Flats. They have sued on their own behalf and as representatives of a class of others similarly situated. No class certification has issued.

Rocky Flats is owned by the United States and operates under the jurisdiction of the U.S. Department of Energy (DOE). Under a series of management contracts with the Atomic Energy Commission and later with the DOE, Dow operated the plant from 1951 through June 1975. Rockwell similarly operated the plant from July 1975 until December 31, 1989.

The gravamen of the complaint is that defendants tortiously released radioactive and nonradioactive hazardous substances into the environment and tortiously concealed or misrepresented the risk arising from these releases. The complaint contains four claims: (1) negligence; (2) absolute or strict liability; (3) misrepresentation and concealment; and (4) outrageous conduct.

For relief, plaintiffs seek "the creation of a fund to finance reasonable medical monitoring and surveillance services ... to ascertain the extent of the adverse impact of Defendants' conduct on" plaintiffs. Complaint at 15–16. In addition, they seek compensation for their alleged diminished ability to secure future employment and insurance as well as exemplary damages.

Jurisdiction is premised on the Price-Anderson Act, 42 U.S.C. § 2210 *et seq.* This Act vests federal district courts with jurisdiction to adjudicate claims for damages against government contractors arising out of or resulting from a nuclear incident. 42 U.S.C. § 2210(n)(2). Section

2014(hh) provides that "the substantive rule for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of [this Act]." 42 U.S.C. § 2014(hh). Thus, the viability of plaintiffs' tort claims turns on interpretation of Colorado law.

## II.

Defendants argue that plaintiffs' claims should be dismissed because they are subject to the exclusivity provisions of Colorado's Workmen's Compensation Act (the Act), Col.Rev.Stat. §§ 8–42–102, 8–52–102 (1986 Repl.Vol.). I agree.

As an initial matter, I note that effective July 1, 1990 the Act was revised. However, because the complaint was filed before this date, and because the parties assume that 1990 revisions do not apply, I do not apply the 1990 revisions.

The Act is to be construed broadly in favor of coverage. *Stewart v. United States,* 716 F.2d 755, 763 (10th Cir.1982), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984). Foremost among the Act's beneficent purposes is the employee's right to speedy compensation for work-related injury or disability regardless of fault. *Id.* In return, the employer is granted immunity from the employee's common law claims. *Id.*

Worker's compensation provides employees with their exclusive remedy for work-related personal injury claims, where their employers are in compliance with the Act. *Kandt v. Evans,* 645 P.2d 1300, 1302 (Colo. 1982). The Tenth Circuit has held that the Act's exclusive remedy provisions apply to Rocky Flats employees. *Stewart,* 716 F.2d at 763.

Section 8–52–102(1) of the Act provides: The right to compensation provided for in [the Act], *in lieu of any other liability to any person for any personal injury* or death resulting therefrom, shall obtain in all cases where the following conditions occur:

(a) Where, at the time of the *injury,* both employer and employee are subject to the provisions of [the Act] and where the employer has complied with the provisions [of the Act] regarding insurance;

(b) Where, at the time of *injury,* the employee is performing services arising out of and in the course of the employee's employment;

(c) Where the *injury* or death is proximately caused by an *injury* or occupational disease arising out of and in the course of the employee's employment.

(Emphasis added); *see also* § 8–42–102; *Kandt,* 645 P.2d at 1302–04.

### III.

■ Plaintiffs first argue that the Act's exclusivity provisions are inapplicable because their claims are not causes of action where "liability" is sought "for any personal injury." I cannot agree.

Just as damages for adverse economic effects and for medical expenses, including future medical expenses, are part of a normal personal injury action, the damages sought here are elemental to a personal injury action because they result from alleged personal exposure to hazardous substances. It is irrelevant to the inquiry that plaintiffs do not presently manifest symptoms of *physical* injury. *See Stuart v. Frederick R. Ross. Inv. Co.,* 773 P.2d 1107, 1109 (Colo.App.1988) ("[p]laintiff's argument that the Act does not apply to these facts because her injuries are primarily 'non-physical' in nature is without merit"); *see also City of Boulder v. Streeb,* 706 P.2d 786 (Colo.1985). The question is not whether these claims are physical or non-physical, the question is whether they are claims for "personal injury" within the meaning of the Act.

Moreover, jurisdiction in this case is based on the Price–Anderson Act, 42 U.S.C. § 2210(n)(2), because this lawsuit is a "public liability" action arising out of or resulting from a "nuclear incident." The Price–Anderson Act defines "nuclear incident" as any occurrence "within the United States causing *bodily injury, sickness, disease or death* ... arising out of or resulting from the radioactive" qualities of source material. 42 U.S.C. § 2014(q) (emphasis added). Bodily injury, sickness or disease necessarily entails personal injury. Either plaintiffs' claims are for bodily injury, sickness

or death—and hence personal injury claims subject to the Act's exclusivity provisions—or this court has no Price–Anderson jurisdiction. In either event, plaintiffs' claims fail.

Because the Act does not provide for the creation of a medical monitoring fund, plaintiffs argue that the exclusivity provisions do not apply. Plaintiffs have cited and I have found no authority for that proposition.

The Act awards compensation only for injuries or occupational diseases which cause disability. § 8–51–101. The Act's exclusivity provisions cover all actions for personal injury. *E.g.,* 8–52–102(1). Because there are some personal injuries that are not disabling (such as a minor scratch), the Act's exclusivity provisions necessarily include some claims for which compensation will not be awarded. As the Tenth Circuit stated in rejecting this argument under the Oklahoma Worker's Compensation Act, "[i]f a worker on the job received a hammer blow to the thumb causing pain and suffering but no time loss [and thus no worker's compensation benefits], surely he or she could not sue the employer in a common law tort action." *Silkwood v. Kerr–McGee Corp.,* 667 F.2d 908, 919 (10th Cir.1981), *rev'd on other grounds,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).

■ That the establishment of a medical monitoring fund is not relief available under the Act is irrelevant as to whether the exclusivity provisions apply. As Professor Larson explains, "[a] distinction must be drawn ... between an injury which does not come within the fundamental coverage provisions of the act, and an injury which is in itself covered but for which, under the facts of the particular case, no compensation is payable." 2A A. Larson, *The Law of Workmen's Compensation,* § 65.40, at 12–41 (1989). Where the injury comes within the coverage formula, an action for damages is barred. *Id.* § 65.00, at 12–1. *See also Silkwood,* 667 F.2d at 919 ("[t]he fact the Act does not compensate for every aspect and degree of the injury makes no difference").

Plaintiffs next argue that defendants' alleged intentional and fraudulent conduct removes plaintiffs' claims from the exclusivity provisions of the Act. Again, I disagree.

The Act, plainly, without exception, abolishes *all* causes of action, common law rights, and suits in equity, against the employer. § 8–42–102. Indeed, the Tenth Circuit and the Colorado state courts have consistently held that the Act applies to intentional torts. *Eason v. Frontier Air Lines*, 636 F.2d 293, 294 (10th Cir.1981) ("a claim of an intentional tort does not avoid the applicability of the Colorado Workmen's Compensation Act"); *Kandt*, 645 P.2d at 1303 (the 1975 amendments "reinforce the conclusion that intentional wrongs arising out of the course of employment are covered" by the Act); *Ellis v. Rocky Mountain Empire Sports, Inc.*, 602 P.2d 895, 898 (Colo.App.1979) ("intentional torts are covered under the Act"). The rationale of these cases applies with equal force to the tort of outrageous conduct.

Although Colorado courts have not addressed whether claims based upon fraudulent misrepresentation and concealment are barred by the Act's exclusivity provisions, I conclude that the Supreme Court of Colorado would hold the bar applicable in this case. "The cases involving allegations of deceit, fraud, and false representation can best be sorted out by distinguishing those in which the deceit precedes and helps produce the injury and those in which the deceit follows the injury and produces a second injury." 2A A. Larson, § 68.32 (1989). "In this first category a tort has usually been found barred, since the deception, so to speak, merges into the injury for which a compensation remedy is provided." *Id.* at § 68.32(a).

This case fits within that first category. Plaintiffs allege that misrepresentations and concealments caused them "losses and damages ... because ... their exposures to hazardous substances have been compounded by the passage of time." Complaint ¶ 44. It is plain that plaintiffs claim that the alleged deception merged into injuries which come within the coverage provisions of the Act.

I hold that plaintiffs' claims for the creation of a medical monitoring and surveillance fund and other damages arising out of defendants' alleged negligence, absolute or strict liability, misrepresentation and concealment, and outrageous conduct constitute causes of action where "liability" is sought "for any personal injury" within the meaning of sections 8–42–102 and 8–52–102(1) of the Act. As such, these claims are barred by the exclusivity provisions of the Act, provided the conditions set forth in sections 8–52–102(1)(a) to (c) are otherwise satisfied. I conclude that there is no genuine issue of material fact that these conditions have been met.

First, at the time of the injury, both defendants, as employers, and plaintiffs, as employees, were subject to the provisions of the Act. § 8–52–102(1)(a). Further, defendants have complied with the provisions of the Act regarding insurance. *Id.* Section 8–41–105(5) provides that an employer can "opt in" to the Act "by purchasing and keeping in force a policy of workmen's compensation insurance" covering the employer's employees. By maintaining and keeping in force such insurance, an employer "shall be deemed to be [in] compliance with the [Act's] insurance requirements." § 8–44–101. Dow and Rockwell have submitted worker's compensation insurance policies issued by The Traveler's Insurance Company, a stock insurance company, covering Rocky Flats for the entire time that they operated the plant. These policies demonstrate that Dow and Rockwell were subject to the provisions of the Act.

Moreover, claims by Rocky Flats workers against defendants have been successfully prosecuted through Colorado's worker's compensation system. *See, e.g., Dow Chemical Co. v. Gabel*, 746 P.2d 1357 (Colo.App.1987). These cases demonstrate that defendants had worker's compensation insurance policies in force during their tenure at the plant. *See also Stewart*, 716 F.2d at 764 ("Rockwell did in fact obtain and maintain [workmen's compensation] insurance").

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon

the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Plaintiffs have not attached affidavits or other evidentiary material rebutting defendants' showing of insurance coverage. Instead, they have filed a Rule 56(f) affidavit arguing that they are unable to submit affidavits opposing defendants' motions without discovery. They contend that discovery is required concerning:

> the existence of secret agreements relating to workers' compensation payments for radiation related injuries; the full extent and nature of any worker's compensation coverage for Rocky Flats workers; the manner in which workers' compensation claims were paid for radiation-related injuries; and exposure and medical records of Rocky Flats workers and information obtained regarding such.

Plaintiffs' Rule 56(f) Affidavit at 3.

Under Rule 56(f), a district court may defer ruling on a motion for summary judgment to permit discovery when affidavits by the party opposing the motion indicate that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed.R.Civ.P. 56(f). However, "summary judgment need not be denied 'merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint.'" *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 537 (10th Cir.1987) (quoting *Pure Gold, Inc. v. Syntex U.S.A., Inc.*, 739 F.2d 624, 627 (Fed.Cir.1984)). The non-moving party has the burden of showing how additional time will enable him to rebut the movant's allegations. *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir.1984). The "nonmovant may not rely on 'vague assertions that additional discovery will produce needed, but unspecified, facts.'" *Meyer*, 816 F.2d at 537 (quoting *Wallace v. Brownell Pontiac–GMC Co.*, 703 F.2d 525, 527 (11th Cir. 1983)). Plaintiffs' Rule 56(f) affidavit fails to meet this burden.

In their brief, plaintiffs argue that *Prescott v. United States*, 731 F.2d 1388 (9th Cir.1984), shows that "secret agreements were entered into between DOE's predecessors and state authorities whereby nuclear weapons workers were exempted from the workers' compensation system.... The existence of these agreements and practices ... raises a serious possibility that similar secret practices existed for employees at Rocky Flats...." Plaintiffs' Brief at 34.

Under the Nevada worker's compensation system at issue in *Prescott*, "employers typically purchase [worker's compensation] insurance by paying premiums to the state insurance fund...." *Prescott*, 731 F.2d at 1390. The dispute in *Prescott* arose because the employer at a Nevada nuclear weapons facility did not pay any premiums. "Instead, in 1956, the Atomic Energy Commission and the Nevada Industrial Commission entered into an agreement which was intended to provide coverage for radiation-related diseases and injuries for employees" at the Nevada facility. *Id.*

In contrast, because Colorado permits employers to comply with the Act by obtaining insurance policies issued by a stock insurance company subject to the Act, §§ 8–44–101(1)(b), 8–44–102, and because the insurance policies obtained by Dow and Rockwell are, by their terms, clearly and unambiguously subject to the Act, "secret agreements" such as those allegedly at issue in *Prescott* are not material to this case. Plaintiffs have not met their burden of showing how discovery will enable them to rebut defendants' showing of insurance coverage under the Act.

At oral argument, plaintiffs asserted that because the insurance premiums paid by defendants equalled the amount paid out in benefits, the insurance possibly did not comply with the Act and that they needed discovery to determine compliance. Again, plaintiffs fail to carry their burden of showing how any discovery would lead to evidence *material* to this issue. The issue is not how defendants chose to pay for their insurance; rather, the issue is whether such insurance coverage existed.

Merely alleging an unconventional premium payment scheme does not meet plaintiffs' Rule 56(f) burden. Plaintiffs have failed to demonstrate how discovery will enable them to overcome defendants' showing of insurance coverage under the Act. Accordingly, plaintiffs' Rule 56(f) request for discovery on this issue is denied.

The requirements of section 8–52–102(1)(b) are likewise satisfied. Plaintiffs concede that they were harmed "by virtue of their employment at Rocky Flats." Complaint ¶ 46. Consequently, there is no genuine issue that the alleged injuries did not arise out of or in the course of their employment at Rocky Flats.

Finally, section 8–52–102(1)(c) is also satisfied. Plaintiffs further admit that their alleged injuries were caused as a result of work-related activities.

### IV.

Plaintiffs, however, contend that their right to due process is violated if they cannot bring this action because they cannot be made to give up their common-law right to sue unless they receive something of value in return. This argument is devoid of merit because plaintiffs have received value in return. Coverage under the Act entitles plaintiffs to benefits according to the terms of the Act. Thus, if plaintiffs suffer disability or death due to work-related injuries, they are entitled to compensation. §§ 8–50–103, 8–51–101. Due process is not violated. *See Kandt v. Evans*, 645 P.2d 1300, 1306 (Colo.1982).

### V.

Plaintiffs final argument is that the exclusivity provisions do not bar their claims against Dow, where exposure was initiated and thus caused by Dow, but did not occur until after Dow's June 30, 1975 departure. Once again, I disagree.

Section 8–48–101 reads in pertinent part:
(1) Any person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof to any lessee, sublessee, contractor, or subcontractor · ... shall be construed to be an employer as defined in articles 40 to 54 of this title. ...

(2) If said lessee, sublessee, contractor, or subcontractor is himself an employer in the doing of such work, and before commencing such work, insures and keeps insured his liability for compensation as provided in articles 40 to 54 of this title, neither said lessee, sublessee, contractor, or subcontractor, its employees, or its insurer shall have any right of contribution or action of any kind ... against the person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof, or against its employees, servants, or agents.

Because the United States contracts out work to the plant's operator, this section bars a common law action against the United States by employees of the plant's operator. *Stewart*, 716 F.2d at 763–65. Moreover, a plant operator's "employees ... shall [not] have any right of ... action of any kind against [the United States'] employees, servants, or agents." § 8–48–101(2). Section 8–48–101(1) defines employee as a "lessee, sublessee, contractor, or subcontractor." Thus, a plant operator's employees have no right of action against a contractor of the United States. Because it is undisputed that Dow was a contractor of the United States, claims against Dow by employees of Rockwell are barred.

It is immaterial that the exposure did not occur until after Dow had ceased operating the plant. Injuries may frequently occur after a particular contractor or subcontractor has ceased work on a project. As long as the alleged injury arises out of work contracted for, section 8–48–101 bars the action.

### VI.

When the layers of plaintiffs' pleadings are peeled away this action is revealed as simply an employees' personal injury suit against their employers. Plaintiffs' sole remedy is worker's compensation. And, because the plaintiff unions' claims are de-

rivative, they too must fall. Accordingly, it is ORDERED that:

(1) Dow's motion to dismiss is GRANTED;

(2) Rockwell's motion to dismiss is GRANTED; and

(3) final judgment shall enter for Dow and Rockwell and against plaintiffs, each side to bear its own costs.