SIMON SERVICE INCORPORATED, a Nevada Cor-
poration, Appellant, v. ALLEN E. MITCHELL,
Respondent.

NEVADA INDUSTRIAL COMMISSION, Intervenor
Respondent.

No. 3942

February 7, 1957.                    307 P.2d 110.

*Morse, Graves & Compton* and *C. Norman Cornwall,*
of Las Vegas, for Appellant.

*Hawkins & Cannon,* of Las Vegas, for Respondent
Mitchell.

*Richard R. Hanna,* of Carson City, for Intervenor
Respondent.

## O P I N I O N

By the Court, Badt, C. J.:

The question presented by this appeal is whether the 1951 amendment to the Nevada Industrial Insurance Act (NRS 616.01 et seq.) removes from eligibility for coverage, under the act, a person who undertakes, without the employment of a "principal contractor", to retain in his own hands the business of erecting a building, parceling out fractions of the work of construction among separate contractors.

Prior to 1951, NRS 616.085 read as follows: "Subcontractors and their employees shall, for the purpose of this act, be deemed to be employees of the principal contractor *or other person having the work done.*" The emphasis has been supplied. The legislature in 1951 (Stats. 1951, 486) deleted the italicized words.

Appellant herein, Simon Service Incorporated, defendant below, under a local building permit, undertook the construction of a building in Las Vegas. It employed two carpenters and a construction engineer. It entered into

separate contracts for performance, respectively, of the plumbing work, the wiring, the painting, plastering, etc. The A. R. Ruppert Plumbing & Heating Company entered into a contract with defendant to do the sheet metal work. The carpenters employed directly by defendant erected a platform for the purpose of permitting installation of such sheet metal work. While an employee of the plumbing company, namely, Allen E. Mitchell, plaintiff and respondent herein, was on such platform, engaged in installing sheet metal, one of the cross braces supporting the platform floor broke, Mitchell was precipitated to the ground some eight feet below and suffered severe injuries. He was awarded compensation by the Nevada Industrial Commission in the lump sum of $6,220.15, but thereafter commenced the present action for recovery of damages from defendant. The Industrial Commission intervened to enforce subrogation to it of sums, if any, recovered from defendant. The case was tried to the court without a jury and judgment was entered for plaintiff in the sum of $13,500, intervenor being subrogated to the rights of plaintiff to the extent of $6,220.15. The trial court thus rejected defendant's affirmative defense that it was the general contractor; that it entered into various subcontracts for construction of certain parts of the building, including a contract with Ruppert; and that Mitchell, an employee of Ruppert, having suffered injuries in the course of his employment, accepted the benefits of the Industrial Insurance Act and had no common law right of recovery as against Simon Service.[1] It is our conclusion that under the circumstances the defense was good and that its rejection was error.

It appears that defendant took out industrial insurance for the persons directly employed by it and the plumbing company took out industrial insurance for its own employees.

---

[1]Both Simon Service and Ruppert had given notice of election to accept the terms of the act, and Mitchell had given no notice of an election to reject the same. Under NRS 616.270, 616.370 et seq., the employer is relieved from liability for recovery of damages and the employee is limited to compensation under the act.

An independent contractor is defined by NRS 616.105[2] and it is provided by NRS 616.115 that the term "subcontractors" shall include independent contractors. In view of such provision, when taken in connection with NRS 616.085 first above quoted, it makes no difference whether we consider the plumbing company to have been a subcontractor or an independent contractor. It did in any event enter into a contract for installing the sheet metal work—and it entered into such contract with the defendant.

The respondent concedes that, if the legislature had not deleted from NRS 616.085 the words "or other person having the work done", respondent Mitchell, as the employee of subcontractor or independent contractor Ruppert, would, for the purposes of the act, be deemed to be an employee of appellant. It contends, however, that the 1951 legislative deletion of the phrase "or other person having the work done", "withdrew from the protection of the statute anyone not a principal contractor". The learned trial judge, in his written opinion, apparently agreed with this contention and held: "Defendant corporation, as the owner of the premises upon which this scaffolding was constructed by its employees, is not a principal contractor within the meaning of * * * the act * * * and is as liable for its negligence to this plaintiff as it would have been for its negligence to one of the general public."

The Supreme Court of Errors of Connecticut, in construing its own industrial insurance act, but under a section which concededly defines "principal employer" rather than "principal contractor" and more definitely spells out the position of such "principal employer" who has the work done without the intervention of a contractor or subcontractor[3] presents convincingly the view

---

[2]NRS 616.105: " 'Independent contractor' means any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

[3]"Principal Employer, Contractor and Subcontractor.—When any principal employer procures any work to be done, wholly or in part

that the owner, undertaking the work of construction without intervention of a principal contractor, places himself, for the purposes of the act precisely in the same position as a principal contractor. The court said: "On principle it is clear that an owner who sets in motion the business of erecting a building may either carry on the business himself, or employ a general contractor to carry it on for him. If the owner chooses to retain in his own hands the business of erecting the building, and to parcel out fractions of the work of construction among separate contractors each responsible solely to the owner for a fraction only of the entire work, the owner must be held to be the principal employer within the meaning of section 5345, and also to be engaged for the time being in the business of constructing the building. Otherwise, section 5345, and, indeed, the whole policy of the Workmen's Compensation Act, might be evaded by the device of the owner parceling out the work of construction among a number of separate contractors no one of whom employed five or more workmen.[4]

"On the other hand, if the owner declines to take upon himself the business of erecting the building, and in good faith employs for that purpose a general contractor engaged in that business, the policy of the act is satisfied by that substitution of another responsible employer in the place of the owner, and the owner does not merely by making such a contract[5] become an employer under the Workmen's Compensation Act or a principal employer under section 5345." Bello v. Notkins, 101 Conn. 34, 124 A. 831, 832.

The complete answer to this is not found in the assertion that the reasoning of the Connecticut court is based

---

for him, by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade or business of such principal employer, and is performed in, on or about premises under his control, then such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor." Gen. Stat. 1918, sec. 5345.

[4]Under the Nevada act, two or more.

[5]Under the Nevada act, by merely "having the work done."

upon the wording of its own statute or that it would have been in point here prior to the 1951 amendment to the Nevada statute. The question intrudes itself more deeply into the salutary and humanitarian purposes of the entire industrial act. It is not enough to say that the amendment withdrew from the protection of the statute anyone not a principal contractor. If it did this, then by the same stroke it withdrew from the protection of the statute an employee (except under other conditions which might not exist) of anyone not a principal contractor. In view of our repeated assertions of the humanitarian purposes of the act, Industrial Commission v. Peck, 69 Nev. 1, 239 P.2d 244, we find it difficult to draw such intent from the 1951 amendment. To find such purpose in the mere use of such term as "principal contractor" is, to say the least, unrealistic and unconvincing. It would compel an owner, who is himself an experienced construction man, to employ a "principal contractor" who would, perchance, let out every phase of the work in subcontracts precisely as the owner would do without the intervention of a "principal contractor." If it would seem an anomaly to call such owner the principal contractor because, forsooth, he cannot contract with himself, he could as well be called principal employer, governor, president or any other term.

The more reasonable explanation of the 1951 amendment may be found in California's experience under a section of its Industrial Insurance Act analogous to NRS 616.085 as originally enacted. In Carstens v. Pillsbury, 172 Cal. 572, 158 P.218, a construction of the California act, St. 1913, p. 279, was undertaken in view of a provision of the California constitution authorizing the legislature to "create and enforce a liability on the part of all employers." The act as passed by the California legislature fixed a liability upon the owner of a lot who had let a contract for the erection of a building thereon, although such owner in no way sustained the relation of an

employer to the employees of the contractor or of the subcontractors. The court held this to be beyond the constitutional authority to the legislature to create a liability on the part of employers. The owner may indeed be said to be the person who "has the work done" but, under the Nevada act, as under the California constitution, the liabilities and exemptions were intended to attach to employers of labor and not simply to owners of property as such. Accordingly, as we interpret the intention of the 1951 amendment, it did eliminate an owner whose only status was as owner, but who might be said, as such owner, to be the person having the work done. When that owner assumed an additional status, as appellant did in this case, of being principal employer or principal contractor, he was not eliminated just because he was also the owner. This interpretation is supported by many clauses of the act itself: the definition of the act as one defining and regulating the liability of *employers* to their *employees;* the definition of employer as every person having any natural person in *service;* the use of the word employer in section after section of the act. A person having the work done—an owner, lessee, licensee —not occupying the status of an employer, or, as a contractor, of one who reasonably could be classed as an employer, was apparently not within the original contemplation of the act and was eliminated by the 1951 legislature. The emphasis upon the relationship of employer and employee (even under the terms of a contract which attempted to limit the status of the principal employer by defining him to be only the owner), under a workmen's compensation law, finds logical exposition in Phoenix Indemnity Co. v. Barton Torpedo Co., 137 Kan. 92, 19 P.2d 739, and the cases therein cited, q.v.

The very purpose of NRS 616.085 is, at least in part, to protect the employees of subcontractors against the possible irresponsibility of their immediate employers by making the principal contractor or principal employer

having general control of the construction liable as if he had directly employed every workman on the job. Bello v. Notkins, 104 Conn. 34, 124 A. 831.

Bearing in mind that the term "principal contractor" is not defined in the act, let us put into the actual juxtaposition in which they occur, in the original act (Stats. 1947, 569) sections 21 and 22.

"Sec. 21. The term 'subcontractors' shall include independent contractors.

"Sec. 22. Subcontractors and their employees shall, for the purpose of this act, be deemed to be employees of the principal contractor."

Appellant, although it employed no general contractor for the entire construction, did employ, as a separate contractor, the plumbing company to install the sheet metal work, as well as employing other separate contractors for other phases of the work. Whether these separate and individual contractors are denominated subcontractors or independent contractors would not affect their direct relationships with appellant. In turn the fact that appellant itself undertook construction of the building and entered into separate contracts for installation of the plumbing, sheet metal, electrical wiring, painting, etc., would seem to indicate that it could quite reasonably be designated the principal contractor. Each of the individual contractors entered into one contract. Appellant entered into a number of contracts— one with each of the separate contractors. No definition contained in the act and none of the provisions therein contained compel the conclusion that the principal contractor must be a general contractor—one who enters into a general contract with the owner for the entire construction. In other words, he would become the "principal employer" as such term is defined in the Connecticut statute construed in Bello v. Notkins, supra. It cannot be said that general and popular acceptance of the meaning of the word "principal" would in any way be violated by the conclusion that appellant was the principal contractor in this case as distinguished from the

other contractors involved who were indeed special.contractors for the performance of special phases of the work, and each of whom entered into a contract with appellant. This is fortified by NRS 616.105 defining "independent contractor" as meaning any person who renders service for a specified recompense for a specified result, under the control *of his principal* as to the result of his work. If appellant was the plumbing contractor's "principal" under this section, he still remained his "principal" under NRS 616.085.

If then we are correct in concluding that appellant was the "principal contractor" as contemplated by NRS 616.085, plaintiff, by the definition contained in such section, was, for the purpose of the act, an employee of appellant. He was therefore relegated to the compensations provided for in the act to the exclusion of his common law remedies against appellant.

We have thus far considered the issue as defined and argued in the opening, answering and reply briefs. The issue involved there appeared to be entirely one of statutory construction. Upon the oral argument, however, an entirely different issue developed. Respondent supported the trial court's decision upon the ground that defendant was not a "contractor authorized and licensed as required by law", and that if he had been such, "the statutory provisions would apply"; that if someone who is a qualified general contractor, engaged in that business, wished to construct a building for his own use, he could gain industrial insurance protection under the act, although he himself acted as the general contractor. As this appeared to us to be an abandonment of the trial court's reason for rejecting defendant's affirmative defense, and as the statutes of this state requiring general contractors to be licensed had not been argued, referred to, quoted or even cited in the briefs, we ordered further briefs submitted upon this point. In response appellant submitted a rather full analysis of the contractors' licensing act. It is entitled, "An Act to create a state contractors' board; defining the powers and duties

of said board; defining contractors and providing for the licensing of contractors; fixing the fees for such licenses; prescribing a penalty for the violation of this act and other matters properly relating thereto.", St. 1941 p. 442, and comprises 35 sections. A full discussion of the act in this opinion does not appear to be justified, but we are satisfied that it bears no direct relation to the Industrial Insurance Act. It serves an entirely different purpose. The purpose of the contractors' licensing act is evident from NRS 624.260, whereunder the contractors' board, created by the act, must require an applicant for a contractor's license "to show such a degree of experience and such general knowledge of the building safety and health laws of the state and of the rudimentary principles of the contracting business as the board shall deem necessary for the safety and protection of the public." It is indeed questionable whether the defendant in this case might not in any event be exempt under the provisions of NRS 624.330, which provides: "This act does not apply to owners of property, building or improving structures thereon for the occupancy of such owner and not intended for sale." Be this as it may, no provision, section, sentence or clause in the Industrial Insurance Act suggests the necessity that contractors be licensed under the statute relied on by respondent. It is not concerned with the question of the criminal liability of a contractor or subcontractor who enters upon or bids for a contract without a license.

In response to our order for supplemental briefs on the applicability of the contractors' licensing act, respondent filed a supplemental brief of 14 pages rearguing his original contentions but without mention of the licensing act upon which we asked to be enlightened and upon which respondent relied in his oral argument as depriving appellant of the protection of the Industrial Insurance Act.

We are satisfied in any event that neither the contractors' licensing act nor the possibility of the violation of any of its provisions by respondent can serve to affect

the status or relationship of the parties under the Industrial Insurance Act under the circumstances of this case.

Reversed and remanded with directions to enter judgment in favor of appellant.

EATHER and MERRILL, JJ., concur.