THAIS WEAVER, APPELLANT, v. SHELL OIL COMPANY, RESPONDENT.

No. 7364

May 23, 1975                    535 P.2d 787

*Samuel B. Francovich* and *Norman H. Samuelson,* Reno, for Appellant.

*Leggett & Hamilton,* Reno, for Respondent.

## OPINION

By the Court, GUNDERSON, C. J.:

This appeal follows a summary judgment favoring respondent, Shell Oil Company. Appellant contends material issues of fact remain for trial, and thus summary judgment was improper. NRCP 56(b)(c).

Appellant sued for damages following her husband's death from injuries sustained at a service station which respondent admits owning, but which was operated by a lessee, according to assertions in respondent's briefs. The deceased was employed by Petroleum Engineering, Inc., a contractor engaged in alterations at the service station. Respondent premised its motion for summary judgment on the contention that appellant's exclusive remedy was NRS Chapter 616, the Nevada Industrial Insurance Act (NIIA), and therefore no fact remained to be litigated. Although the court's order for summary judgment did not expressly recite why summary judgment was granted, it referred to the affidavit of a Nevada Industrial Commission (NIC) employee, and the judge apparently felt respondent's remedy, if any, was necessarily under the NIIA. This, we think, was error.

Appellant's complaint alleges the deceased was injured by burning gasoline escaping from a pump with a faulty safety

valve, under the supervision, management and control of respondent. The complaint further alleges respondent had knowledge of the defect. Respondent denies all this, of course, but respondent's relationship to its lessee, the terms of their lease—these are not shown by the record. What obligations, rights and duties respondent retained in regard to the demised premises—whether the defect that allegedly caused death pre-existed the "lease" thereof—these facts also are now unknown. All we know is that respondent apparently held fee title to the premises, "leased" them in some manner, then contracted for improvements thereon, and that subsequently an employee of one of the contractors was killed on the premises, allegedly due to respondent's fault.

1.   We reject respondent's contention that this case is controlled by Simon Service v. Mitchell, 73 Nev. 9, 307 P.2d 110 (1957), and Titanium Metals v. District Court, 76 Nev. 72, 349 P.2d 444 (1960), which both concerned whether the respective appellants were "principal contractors" within NRS 616.085, and thus insulated from common law liability by the NIIA's exclusive remedy provision.

NRS 616.085, as amended in 1951, now declares only that "[s]ubcontractors and their employees shall be deemed to be the employees of the principal contractor." Previous broad closing reference to, "or other person having the work done," was deleted. Nev. Stats. of 1951, 486. In the *Simon Service* case, cited above, we construed the NIIA in its present form "to protect the employees of subcontractors against the possible irresponsibility of their immediate employers by making the principal contractor or principal employer having general control of the construction liable as if he had directly employed every workman on the job." 73 Nev. at 15–16, 307 P.2d at 113. Without the aid of a general contractor, Simon Service, Inc., had entered into several separate contracts in order to construct a building upon its property. Mitchell, an employee of one contractor, suffered injury during the construction project, over which Simon Service, Inc., had retained control. In these circumstances, Simon Service, Inc., was held the principal contractor or principal employer pursuant to NRS 616.085 and, having complied with the necessary provisions of the NIIA, was insulated from a common law action.[1]

---

[1]In the *Simon Service* case, this court considered at length the import of the 1951 amendment to NRS 616.085, as follows:

"... The owner may, indeed, be said to be the person 'who has the

Again, in *Titanium Metals,* cited above, we held Titanium had status as a principal employer or principal contractor because, *inter alia,* it was to complete most of the expansion project with its own employees. Upon the facts, Titanium had sufficient control of the entire project to be considered a principal employer of injured individuals actually paid by a subcontractor hired to complete other parts of the expansion.

From the record in the instant case, however, such authorities are not clearly controlling here. It is true that an affidavit indicates respondent has complied with its obligations under the NIIA, at least in regard to some of its other business operations. The deceased's immediate employer, Petroleum Engineering, Inc., apparently also has complied. Originally named in appellant's complaint as a defendant, Petroleum Engineering, Inc., filed a motion to dismiss supported by an affidavit of an NIC employee, reciting the Industrial Commission has accepted appellant's claim and paid benefits under the act, and thus signified determination that the deceased's injuries "arose out of and in the course and scope of his employment with Petroleum Engineering, Inc." The motion was granted without opposition, and evidently appellant does not challenge the propriety of such ruling. Still, appellant does not concede, and respondent has not shown, that respondent had such control over the actions of Petroleum Engineering, Inc., and its employees, as to render respondent's relationship to the deceased tantamount to that of employer.

Thus, assuming that the doctrine of *Simon Service* and

work done' but, under the Nevada Act, as under the California Constitution, the liabilities and exemptions were intended to attach to employers of labor and not simply to owners of property as such.

"Accordingly, as we interpret the intention of the 1951 amendment, it would eliminate an owner whose only status was as owner, but who might be said, as such owner, to be the person having the work done. When that owner assumed an additional status, as appellant did in this case, of being principal employer or principal contractor, he was not eliminated just because he was also the owner. This interpretation is supported by many clauses of the act itself: the definition of the act as defining and regulating the liability of *employers* to their *employees;* the definition of employer as every person having any natural person in *service;* the use of the word employer in section after section of the act. A person having the work done—an owner, lessee, licensee—not occupying the status of an employer, or, as a contractor, of one who reasonably could be classed as an employer [sic], was apparently not within the original contemplation of the act and was eliminated by the 1951 legislature. . . ." 73 Nev. at 15, 307 P.2d at 113; emphasis in original.

*Titanium Metals* might be proved applicable to this case, one cannot tell from the record presented whether respondent is in fact entitled to claim such a defense. Under NRCP 56, the burden of establishing the existence of such defense, as a matter of law, was upon respondent as the movant. Daugherty v. Wabash Life Ins. Co., 87 Nev. 32, 482 P.2d 814 (1971). That burden was not met.

2. Respondent argues, however, that even if it lacked necessary control of the project to be a principal contractor or principal employer, nonetheless summary judgment was proper, because there could be no basis for maintaining a common law action against it. Again, we cannot agree.

We are, of course, disinclined to assay abstract review of all nuances, of all theories, under which a landowner who transfers a possessory interest in property may be liable to others entering the premises with express or implied consent. In diverse factual situations, various theories may obtain. See, for example: Restatement, Torts 2d, § 357–362; Seavy v. I.X.L. Laundry Co., 60 Nev. 324, 108 P.2d 853 (1941); Hayes v. Richfield Oil Corp., 240 P.2d 580 (Cal. 1952).

Whether any theory of liability will prove applicable, upon a trial, we cannot discern from the record before us. However, in the absence of a clearly established NIIA defense, we cannot justify summary judgment on the assumption that trial will show nothing to create a jury question on a legal theory consistent with the pleadings. Accordingly, summary judgment in respondent's favor must be and is hereby reversed.

The cause is remanded for further proceedings.

BATJER, ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.