**John E. LEWIS and Roseanne M. Lewis, Plaintiffs-Appellants,**

·v.

**UNITED STATES of America, Defendant-Appellee.**

No. 80–4515.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 26, 1982.*

Decided June 22, 1982.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 28     U.S.C. 9th Cir.R. 3(a) and Fed.R.App.P. 34(b).

Robert E. Rose, Cochran & Rose, Las Vegas, Nev., for plaintiffs-appellants.

Mark S. Feldheim, Washington, D.C., for defendant-appellee.

Before ANDERSON, TANG and BOO-CHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

The issue presented is whether the Government adequately demonstrated that it was a "principal contractor," and therefore immune from ordinary tort liability under Nevada law, to warrant summary judgment. Because we find that there are genuine issues of fact regarding the amount of control the Government had on the jobsite in question, we reverse and remand.

## FACTS

The district court set forth the facts underlying this case in its opinion.[1] We restate them briefly.

Plaintiff John Lewis was employed by the Ray N. Bertelsen Company (Bertelsen) when he sustained severe injuries while working on the Rye Patch Dam improvement project in Nevada. He was injured when cables that held a raised dam gate tore loose from their shackles, allowing the gate to fall and hit him as he worked below. Bertelsen was under contract with the United States, the owner of the dam, to make improvements to the dam.

Following his injury, Lewis received benefits under the Nevada Industrial Insurance Act (NIIA), Nev.Rev.Stat. §§ 616.010 *et seq.*, by virtue of coverage provided by Bertelsen. He then sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, for its alleged negligence in installing and inspecting the cables and dam gate that caused his injury.

The Government moved for summary judgment. The district court granted the motion, reasoning that the Government was the "principal contractor" on the dam improvement project, that it had a "statutory employer-employee relationship" with Lewis, and that it was therefore immune from ordinary tort liability pursuant to the NIIA's exclusive remedy provisions. 501 F.Supp. at 45–46. Lewis appeals.

## DISCUSSION

■ The district court properly concluded that Nevada law governs the determination of the Government's liability and that both Nevada's statutory and decisional law must be considered. 501 F.Supp. at 42. *See* 28 U.S.C. § 1346(b); *United States v. Sutro*, 235 F.2d 499, 500 (9th Cir. 1956). Nevada law provides that the benefits provided under the NIIA are the exclusive remedy for work-related injuries, "except as otherwise provided [by the NIIA]." Nev.Rev.Stat. § 616.370(1). *See also* Nev.Rev.Stat. § 616.270(3). In other words, the statute shields "employers" who accept its terms from ordinary tort liability. Nev.Rev.Stat. § 616.270. *See Outboard Marine Corp. v. Schupbach*, 93 Nev. 158, 561 P.2d 450, 454 (1977). The statute allows injured workers, however, to proceed in tort against any party "other than the employer" that might be legally liable for the injuries sustained. Nev.Rev.Stat. § 616.560(1).

■ For the purposes of the NIIA, Nevada courts recognize that an employee may be deemed to have more than one employer, even while performing a single task. *See Antonini v. Hanna Industries*, 94 Nev. 12, 573 P.2d 1184, 1187 (1978). *See also* Nev.Rev.Stat. § 616.085. For example, a property owner who contracts to have work done on his property, in certain circumstances, will be considered an "employer" and will be shielded from ordinary tort liability for work-related injuries incurred by his contractors' employees. The Nevada Supreme Court states the rule as follows: "an owner of property who functions as his own principal contractor will be deemed an 'employer' under the [NIIA]." *Hosvepian v. Hilton Hotels Corp.*, 94 Nev. 768, 587 P.2d

1. The opinion is reported at 501 F.Supp. 39 (D.Nev.1980).

70

1313, 1314 (1978). *See also Whitley v. Jake's Crane & Rigging, Inc.*, 95 Nev. 819, 603 P.2d 689, 690 (1979) (per curiam); *Titanium Metals Corp. v. District Court*, 76 Nev. 72, 349 P.2d 444, 445 (1960); *Simon Service, Inc. v. Mitchell*, 73 Nev. 9, 307 P.2d 110 (1957). Thus, whether the Government is immune from liability in this case depends on whether it is an "employer" or principal contractor or, instead, is merely a property owner.

In *Simon Service*, the Nevada Supreme Court declared that a property owner does not become an employer for the purposes of the NIIA merely by contracting to have work performed on his property. 307 P.2d at 112. It reasoned that the NIIA's exclusivity provisions were intended to shield from liability "employers of labor and not simply ... owners of property as such." 307 P.2d at 113. The Nevada Supreme Court has subsequently delineated the factors it considers relevant in determining whether an employment relationship exists.

In characterizing the relationship between an owner-contractee and a worker engaged in a particular project with respect to that owner's property, we have placed primary emphasis upon the amount of "control" exercised by the contractee over the worker. Under the general term "control" several factors have been accorded substantially equal weight in determining the existence of an employment relationship. These include the degree of supervision exercised over the details of the work, the source of the worker's wages, the existence of a right to hire and fire the worker, and the extent to which the worker's activities further the general business concerns of the alleged employer....

[A]n owner-contractee who exercise[s] significant operational control over the details of the construction work for which he ha[s] contracted assume[s] employer status for the purposes of NRS 616.560.

*Antonini*, 573 P.2d at 1186.

To determine whether the Government had satisfied its burden of demonstrating "employer" status and entitlement to immunity from ordinary tort liability,[2] the district court looked to three Nevada cases for guidance. In *Hosvepian*, the court upheld summary judgment for a property owner who "retained ... general supervisory control over the progress of work and the purchase of materials" and "retained and exercised control of the details of the work." 587 P.2d at 1315. In *Titanium Metals*, the court barred a tort action against a property owner that, although having contracted to have some work done, retained authority to determine the scope of the work, to make changes and to add or omit work. The owner, in fact, through its own employees, performed fifty-four percent of the work. 349 P.2d at 445. In *Simon Service*, the court held that an owner who parceled out fractions of construction work on a building among separate contractors was a principal contractor. 307 P.2d at 113–14.

■ We find those cases readily distinguishable from the case at bar. In those cases the property owners had retained and exercised significant control over the work being performed. In the present case the district court relied primarily upon the following facts in awarding summary judgment: (1) the Government designed and planned the improvement project; (2) a Government inspector was on the job site daily to assure compliance with contract specifications; (3) a Government engineer was "on call" for consultation; (4) extraordinary tasks, *e.g.*, blasting, required prior Government approval; and (5) the Government retained the authority to suspend or terminate Bertelsen's work under certain conditions. 501 F.Supp. at 46. Conspicuously absent are findings that the Government supervised the details of Lewis' work, that it had authority to fire him, or that it was the source of his wages. Indeed, the record contains evidence indicating that Bertelsen, or one of its agents, hired Lewis,

2. The party seeking summary judgment bears the burden of showing the absence of a genuine question of material fact. *See generally* Fed.R. Civ.P. 56.

paid his wages, retained the exclusive authority to discharge him, and supervised his daily activity. Regarding the supervision of the construction, the only Government employee at the Rye Patch job-site on a daily basis testified that his capacity was one of inspector rather than supervisor. The Bertelsen job-site supervisor agreed with this assessment. This evidence amply demonstrates the existence of a genuine issue of material fact regarding whether the Government had sufficient control over Lewis to be deemed his "employer" in light of the factors set forth in *Antonini*.

This case closely resembles recent cases in which the Nevada Supreme Court has reversed summary judgments in favor of property owners. *See Daniels v. Las Vegas Transfer & Storage*, Nev., 627 P.2d 400 (1981) (per curiam); *Ortolano v. Las Vegas Convention Service*, Nev., 608 P.2d 1103 (1980) (per curiam); *Alsup v. E. T. Legg & Co.*, 94 Nev. 297, 579 P.2d 769 (1978) (per curiam); *Weaver v. Shell Oil Co.*, 91 Nev. 324, 535 P.2d 787 (1975). In each of the four cited cases, the court found the record inadequate to determine conclusively whether the property owner was a statutory employer. Similarly, the record in this case does not support the district court's ruling that the United States was a "principal contractor" as a matter of law.[3] Accordingly, we REVERSE and REMAND.[4]

---

3. We recently reversed an award of summary judgment for the Government under very similar circumstances. *See Snow v. United States*, 479 F.Supp. 936 (D.Nev.1979), *aff'd in part and rev'd in part without opinion*, 671 F.2d 504 (9th Cir., 1981).

4. Because the district court did not decide whether the United States, if found to be an "employer," could nevertheless be held liable under the "dual capacity" doctrine, *i.e.*, that it could be held liable for negligence arising out of obligations independent of those imposed on it as an "employer," we need not reach that issue. In this regard, *see generally* 2A A. Larson, Workmen's Compensation § 72.80, at 14–112 (1976); *Noland v. Westinghouse Electric Corp.*, Nev., 628 P.2d 1123, 1124 n.1 (1981).