BILLY R. HARRIS, APPELLANT, v. RIO HOTEL & CASINO, INC., A NEVADA CORPORATION, RESPONDENT.

No. 32816

June 21, 2001                                    25 P.3d 206

---

*McKnight & Hendrix,* Las Vegas, for Appellant.

*Smith & Kotchka,* Las Vegas, for Respondent.

## OPINION

By the Court, MAUPIN, C. J.:

The Nevada Industrial Insurance Act (''NIIA'' or ''the Act'') provides exclusive remedies for Nevada workers injured by accidents arising out of and in the course of employment.[1] The Act generally immunizes employers, who must procure workers' compensation coverage for their employees, from common law liability for workplace injuries.[2] Principal contractors are deemed to be

---

[1]*See* NRS 616A.020(1), which states in part:

> The rights and remedies provided [by the NIIA] for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive, except as otherwise provided [in the NIIA], of all other rights and remedies of the employee, his personal or legal representatives, dependents or next of kin, at common law or otherwise, on account of such injury.

[2]*See* NRS 616C.215(2)(a), which provides in part:

employers of their subcontractors, independent contractors and employees of either.[3] The statutory definition of a "principal contractor" as a person who coordinates all work on a project, contracts to complete a project, contracts for the services of subcontractors and independent contractors, or is responsible for paying subcontractors and independent contractors,[4] encompasses the commonly used term "general contractor."

We are asked in this appeal to decide whether a landowner that constructs improvements to real property through a licensed general contractor enjoys the same immunity under the NIIA as the contractor. Cognizant of the considerable confusion that has developed over the years in our jurisprudence on the subject, we conclude that the property owner stands in the shoes of the general contractor and is immune from liability.

Appellant, Billy R. Harris, was severely injured during construction of an addition to the Rio Hotel and Casino ("the Rio") in Las Vegas, Nevada. Harris claimed and recovered Nevada workers' compensation benefits from his direct employer, Marnell Corrao Construction Company, the project's licensed general contractor. He then filed a common law action against the Rio on the theory that the Rio's scheduling demands created an atmosphere of recklessness on the job site.

The Rio moved to dismiss the action, claiming immunity under the NIIA. The district court treated the motion as one for summary judgment under NRCP 56. It concluded, as a matter of law, that landowners as well as general contractors are immunized under the NIIA from common law actions brought by employees of the general contractor and sub-contractors, when the injuries sustained arise in the course of performance of a general construction contract. The district court based its ruling upon our 1976 decision in *Frith v. Harrah South Shore Corp.*[5] Accordingly, the district court granted summary judgment in favor of the Rio. Harris appeals.

## DISCUSSION

Issues concerning NIIA immunity of owners to persons involved in the construction of improvements to real property have

---

2. When an employee receives an injury for which compensation is payable pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS and which was caused under circumstances creating a legal liability in some person, other than the employer or a person in the same employ, to pay damages in respect thereof:

(a) The injured employee, or in case of death his dependents, may take proceedings against that person to recover damages . . . .

[3]*See* NRS 616A.210; NRS 616B.603.

[4]NRS 616A.285.

[5]92 Nev. 447, 552 P.2d 337 (1976).

surfaced from time to time in our jurisprudence since 1957. Our cases, as well as legislative amendments to the NIIA, have generated much confusion as to the precise nature of the immunity enjoyed by landowners in construction as well as non-construction settings. Cases that illustrate the long-standing debate over this issue include *Oliver v. Barrick Goldstrike Mines,*[6] *Sims v. General Telephone & Electric,*[7] *Karadanis v. Sourwine,*[8] *Meers v. Haughton Elevator,*[9] *Leslie v. J. A. Tiberti Construction,*[10] *Antonini v. Hanna Industries,*[11] *Frith,*[12] *Weaver v. Shell Oil Co.,*[13] *Titanium Metals v. District Court,*[14] *Simon Service v. Mitchell,*[15] and most recently, *Tucker v. Action Equipment and Scaffold Co.*[16] In *Tucker,* we resolved in large part the standards for immunity in non-construction matters, and partially resolved the standards applicable in construction cases. In our resolution of this appeal, we now undertake to clarify our prior cases on this subject and provide a definitive statement of the rule of workplace immunity under the NIIA in cases arising from the performance of construction contracts.

Harris argues on appeal that the district court erroneously relied upon *Frith* in its conclusion that his suit is barred as a matter of law. *Frith* held, at least implicitly, that a real property owner is not, as a matter of law, subject to common law liability for workplace injuries incurred by employees performing construction work on the property pursuant to a general construction contract.

In *Frith,* an injured worker alleged that the property owner—although having hired a general contractor to construct improvements—enjoyed no NIIA immunity because it retained a degree of control over the construction project.[17] We affirmed the district court's conclusion that the property owner was statutorily immune ''regardless of whether [the owner] or [the general contractor] was in fact [the injured worker's] employer.''[18] We further held that:

---

[6]111 Nev. 1338, 905 P.2d 168 (1995).

[7]107 Nev. 516, 815 P.2d 151 (1991).

[8]105 Nev. 793, 783 P.2d 454 (1989).

[9]101 Nev. 283, 701 P.2d 1006 (1985).

[10]99 Nev. 494, 664 P.2d 963 (1983).

[11]94 Nev. 12, 573 P.2d 1184 (1978).

[12]92 Nev. 447, 552 P.2d 337.

[13]91 Nev. 324, 535 P.2d 787 (1975).

[14]76 Nev. 72, 349 P.2d 444 (1960).

[15]73 Nev. 9, 307 P.2d 110 (1957).

[16]113 Nev. 1349, 951 P.2d 1027 (1997).

[17]92 Nev. at 451, 552 P.2d at 340.

[18]*Id.* at 449-50, 552 P.2d at 339.

If Harrah[, the owner,] could be deemed the principal contractor and the principal employer of Frith[, the injured worker], it would not be excluded from coverage under the Nevada Industrial Insurance Act and the insulation from common law liability just because it was also the owner of the real property where the injury occurred. If Campbell Construction Company[, the general contractor that directly employed Frith,] is the bona fide employer of Frith, then both Harrah and Campbell would be insulated by the Nevada Industrial Insurance Act from any common law liability.[19]

*Frith* implies that, with or without retention of some control over the course of construction by the owner, the owner and its general contractor stand in the same shoes for the purposes of NIIA immunity. This proposition is underscored by the rationale for the decision, that if immunity were not granted, "no owner of real property in this state would dare allow a workman upon his property."[20]

In concluding that NIIA immunity barred the worker's common law suit against the property owner regardless of the control the owner exercised over the project, the *Frith* court relied in part on our decision in *Simon Service v. Mitchell*.[21] *Simon Service* is the seminal case in which we articulated a broad-based immunity under the NIIA.

In *Simon Service,* a real property owner constructed improvements through various independent contractors without using a general contractor as an intermediary.[22] A worker employed by one of the independent contractors was injured during the course of construction and sued the property owner in a common law negligence action.[23] Both the owner and the worker's employer paid premiums for industrial insurance for their respective employees.[24]

Relying on the general purposes of the Nevada workers' compensation laws and the language of NRS 616.085(1) (re-codified as NRS 616A.210(1)) that "subcontractors, independent contractors and the employees of either shall be deemed employees of the principal contractor," this court concluded that the landowner was immune under the Act. We equated an owner parceling work to various independent contractors with a general contractor working through "subcontractors." Notwithstanding that the 1951

---

[19]*Id.* at 453, 552 P.2d at 341 (citations omitted).

[20]*Id.* at 453, 552 P.2d at 341.

[21]73 Nev. 9, 307 P.2d 110 (1957).

[22]*Id.* at 10-11, 307 P.2d at 110-11.

[23]*Id.* at 11, 307 P.2d at 111.

[24]*Id.*

Legislature had previously eliminated explicit immunity for "other person[s] [persons other than principal contractors] having the work done,"[25] the court noted that to conclude otherwise "would compel an owner, who is himself an experienced construction [person], to employ a 'principal contractor' who would, perchance, let out every phase of the work in subcontracts precisely as the owner would do without the intervention of a 'principal contractor.'"[26] Thus, we reasoned that a contrary construction of the statute would encourage property owners with construction expertise to undergo the unnecessary expense of hiring an intermediary to avoid loss of NIIA immunity. This statement of policy tipped the balance in favor of immunity in that instance.

The decision in *Simon Service* did not explicitly reach the question whether a landowner that retains a general contractor to undertake all phases of a construction project enjoys NIIA immunity. It did note in dictum that the 1951 amendment abrogated immunity to an owner "whose only status was as owner, but who might be said, as such owner, to be the person having the work done."[27] Nevertheless, by placing an owner undertaking construction "without intervention of a principal contractor" in the same position under the NIIA as a principal contractor,[28] *Simon Service* provided logical authority for the court's later decision in *Frith* that the landowner stands in the shoes of its general contractor for immunity purposes.

The decisions in *Simon Service* and *Frith* are fundamentally sound. Indeed, they are compelled by fidelity to the principles underlying the workers' compensation scheme. Employers are required by the NIIA to provide and secure industrial insurance for employees, who are thereby guaranteed compensation for industrial injuries; and in return, the NIIA grants employers immunity from common law actions. Since a principal contractor or principal employer undertaking a construction project is held responsible, statutorily, for all the workers on the project, the principal should enjoy the corresponding benefit of statutory immunity.

In the years following *Frith,* this court developed a "control test," which it applied in varying degrees in both construction and non-construction cases. Under this test, an owner "who exercised significant operational control over the details of the construction

---

[25]*Id.* at 10, 307 P.2d at 110 (emphasis omitted).

[26]*Id.* at 14, 307 P.2d at 112.

[27]*Id.* at 15, 307 P.2d at 112-13.

[28]*Id.* at 13, 307 P.2d at 112.

work for which he had contracted assumed employer status for the purposes of [NIIA immunity]."[29] The control test had roots in earlier NIIA immunity cases that sought to define a standard for determining when an independent contractor was an "employee" covered by the Act.[30] We used a "control" analysis on numerous occasions, in *Leslie v. J. A. Tiberti Construction*[31] (a construction case), *Ortolano v. Las Vegas Convention Service*[32] (a non-construction case), *Whitley v. Jake's Crane & Rigging, Inc.*[33] (a construction case), *Alsup v. E. T. Legg & Co.*[34] (a non-construction case), *Antonini v. Hanna Industries*[35] (a non-construction case), *Corrao Construction Co. v. Curtis*[36] (a construction case), and *Hosvepian v. Hilton Hotels Corp.*[37] (a construction case). Additionally, *Simon Service* and *Titanium Metals v. District Court*[38] are based upon a traditional "control" analysis.

Harris contends that *Antonini* and *Karadanis v. Sourwine*[39] have limited *Frith* to its special facts and require that cases such as this be analyzed under the "control test"—a test which the Rio, as an inactive landowner, arguably cannot satisfy. We disagree. Because the "control test" no longer applies, and for the following reasons, we re-affirm *Frith* and conclude that the district court's ruling was not in error.

As acknowledged in *Tucker*,[40] our attempts to objectify criteria for NIIA immunity in construction and non-construction settings have resulted in much confusion. In *Tucker*, we noted inconsistencies created in *Leslie, Sims, Oliver, McDowell* and *Weaver*, and to a degree, resolved much of the historical confusion in this area. Thus, *Tucker* abandoned the "control test" as the primary standard applicable to determine whether one is immune from suit under the NIIA, stating that control is only one factor to be con-

---

[29]*See Antonini v. Hanna Industries,* 94 Nev. 12, 15, 573 P.2d 1184, 1186 (1978).

[30]*See, e.g., McDowell Constr. Supply v. Williams,* 90 Nev. 75, 518 P.2d 604 (1974), *overruled by Tucker v. Action Equip. and Scaffold Co.,* 113 Nev. 1349, 951 P.2d 1027 (1997); *Nevada Ind. Comm'n v. Bibb,* 78 Nev. 377, 374 P.2d 531 (1962).

[31]99 Nev. 494, 664 P.2d 963 (1983).

[32]96 Nev. 308, 608 P.2d 1103 (1980).

[33]95 Nev. 819, 603 P.2d 689 (1979).

[34]94 Nev. 297, 579 P.2d 769 (1978).

[35]94 Nev. 12, 573 P.2d 1184 (1978).

[36]94 Nev. 569, 584 P.2d 1303 (1978).

[37]94 Nev. 768, 587 P.2d 1313 (1978).

[38]76 Nev. 72, 349 P.2d 444 (1960).

[39]105 Nev. 793, 783 P.2d 454 (1989).

[40]113 Nev. at 1355, 951 P.2d at 1031.

sidered in resolving non-construction cases.[41] *Tucker* also entirely abandoned the use of the "control test" when the workplace accident occurs in the course of a construction project.

We now turn to the cases primarily relied upon by Harris in this matter, *Antonini* and *Karadanis*. *Antonini,* a non-construction case, relied on *Frith* and *Simon Service,* two construction cases, and applied the control test to determine whether a convention exhibit owner was a statutory co-employer immune from common law liability for injuries sustained by a contract laborer dismantling the exhibit under the owner's supervision. The *Antonini* court noted:

> Thus, we have held that an inactive owner of property does not become an "employer" under the NIIA merely through his status as a contractee for services to his property. *Frith v. Harrah's* [sic] *South Shore Corp.*, 92 Nev. 447, 552 P.2d 337 (1976). [Sic] *Simon Service v. Mitchell,* [73 Nev. 9, 307 P.2d 110 (1957)]; *Titanium Metals v. District Court,* 76 Nev. 72, 349 P.2d 444 (1960). Therefore, in what apparently was [the contractor's] normal contract procedure, in which [a convention] exhibitor merely engaged [the contractor] to erect and disassemble an exhibit under the direction of [the contractor] personnel, the *inactive* exhibitor did not become, by reason of its status as an owner-contractee, an "employer" subject to the NIIA.[42]

The footnote in *Antonini* quoted above discloses the foundational precept underlying the line of construction and non-construction cases that adopted the control analysis after *Frith*. We stress that, contrary to the quoted language, *Frith* more precisely holds that a defendant's status as a property owner does not, of necessity, preclude immunity under the NIIA.

The "control" cases decided after *Frith* seemingly undermine its implied ruling that a landowner that utilizes a general contractor to construct improvements enjoys NIIA immunity. As noted above, however, the control test has now been discarded by our recent decision in *Tucker*.[43] Accordingly, to the extent that *Antonini, Corrao, Alsup, Hosvepian, Whitley, Ortolano, Leslie,* or other Nevada cases embrace the control test as a primary method for resolving NIIA immunity issues, they are now expressly overruled.

*Karadanis,* as the district court noted in its written decision, seemingly conflicts with *Frith. Karadanis,* a case decided fourteen

---

[41]*Id.* at 1354-58, 951 P.2d at 1030-33; *see also Leslie,* 99 Nev. 494, 664 P.2d 963 (rejected as continuing authority in *Tucker*).

[42]94 Nev. at 15 n.4, 573 P.2d at 1186 n.4.

[43]*See Tucker,* 113 Nev. 1349, 951 P.2d 1027.

years after *Frith,* rejected the contention of a long-term lessee of property (the equivalent of an owner for these purposes) that, under *Frith,* NIIA immunity shielded it against a negligence claim brought by a general contractor's statutory employee.[44]

In *Karadanis,* members of a partnership that leased (owned) the property and operated a resort hotel on the premises were also members of a separate partnership retained as the general contractor to improve the hotel property. The *Karadanis* court attempted to distinguish *Frith* on the grounds that the partnership that owned and operated the property was a separate entity from the general contracting partnership:

> The [lessee/owner] claim[s] that once immunity attaches to Karadanis and Maloff as partners in the construction firm that immunity also immunizes them as partners in the casino partnership . . . . The clients cite *Frith v. Harrah South Shore Corp.,* 92 Nev. 447, 552 P.2d 337 (1976), in which an injured worker attempted to sue Harrahs as an owner of the premises where the injury occurred even though the Harrahs corporation was immune as the statutory employer of the injured worker. We held in *Frith* that Harrahs did not lose its immunity as an employer ''just because it was also the owner of the real property where the injury occurred.''[45]

The decision in *Karadanis* stressed the separate identity of the resort partnership and the contractor partnership, also indicating without explanation that the defendant in *Frith* was acting both as the owner and the construction company. In fact, the recitation of facts in *Frith* only notes that Harrah was the owner and that the claimant was the direct employee of a separate general contractor hired to construct a new hotel facility on the property. Thus, *Karadanis* and *Frith* cannot be distinguished as suggested in the *Karadanis* decision.

The *Karadanis* decision also characterizes *Frith* simply as a rejection of the ''dual capacity doctrine,''[46] which this court discussed in a series of cases starting in 1981 with *Noland v. Westinghouse Electric Corp.*[47] In those cases, injured workers sought to avoid the NIIA exclusive remedy provision and the immunity afforded to statutory co-employees on the theory that the alleged tortfeasors acted not only as co-employees, but also in other capacities, such as a product supplier or a landlord of a

---

[44]105 Nev. at 794, 783 P.2d at 454.

[45]*Id.* at 795, 783 P.2d at 455 (quoting *Frith,* 92 Nev. at 453, 552 P.2d at 341).

[46]*Id.* at 795 n.1, 783 P.2d at 455 n.1.

[47]97 Nev. 268, 628 P.2d 1123 (1981).

statutory employer.[48] This court in *Noland* and subsequent cases directly reaching the issue rejected the doctrine, citing the broad-based immunity provided under the NIIA. While *Frith* can be read consistently with *Noland* and its progeny, *Frith* was not decided under the dual capacity doctrine, and the doctrine is not at issue in this case.

On the other hand, *Frith* cannot be read consistently with *Karadanis*. Both cases involved claims of immunity by a landowner that had retained a general contractor to construct property improvements, but the decisions reached diametrically opposite results. Because we now re-affirm *Frith,* we conclude that *Karadanis* is no longer valid and we expressly overrule it.

Having decided that *Antonini, Karadanis* and the "control test" no longer govern our analysis, we must now determine whether a landowner that retains a licensed general contractor to construct property improvements is immune, under *Frith* and the NIIA, from common law liability for industrial injuries incurred during performance of the construction contract.

As noted, in *Tucker* we re-visited the scope of NIIA immunity in light of 1991 amendments to the Act. We observed that the enactment of NRS 616.262 (re-codified as NRS 616B.603) manifested the Legislature's intent to codify the test enunciated in *Meers v. Haughton Elevator*[49] for non-construction cases, thus abrogating use of the control test for determining employer immunity in non-construction cases.

The Legislature's codification of *Meers* in NRS 616B.603, which is located in the section of the NIIA governing liability for provision of coverage, addresses the relationship between independent enterprises that contract with each other. NRS 616B.603(1) provides that a person is not an employer for NIIA purposes if:

> (a) He enters into a contract with another person or business which is an independent enterprise; and
> (b) He is not in the same trade, business, profession or occupation as the independent enterprise.

NRS 616B.603(2) defines "independent enterprise," as used in the section, as a person who holds himself out as being engaged in a separate business and:

---

[48]*See id.; see also Watson v. G.C. Associates Ltd.,* 100 Nev. 586, 691 P.2d 417 (1984); *Howard v. District Court,* 98 Nev. 87, 640 P.2d 1320 (1982).

[49]101 Nev. 283, 701 P.2d 1006 (1985) (holding that a non-construction independent contractor is immune from common law suit when the work it performs on behalf of a contracting party is normally carried out in that business through the contractee's own employees and not through independent contractors).

(a) Holds a business or occupational license in his own name; or

(b) Owns, rents or leases property used in furtherance of his business.

Thus, under NRS 616B.603 and *Meers,* upon which the statute is based, a person who enters into a contract with an independent enterprise in a different line of work, to perform work not normally carried out by the person's own employees, is not considered a statutory employer.[50] This makes sense, given the overall purpose of workers' compensation, because it places responsibility on independent enterprises, which are separate business entities, for their own employees and not the employees of other independent enterprises with which they interact. Such contracting independent enterprises do not enjoy employer immunity from suit by the other's employees, but their liability for providing workers' compensation coverage is clearly defined and limited in scope.

*Tucker,* having explained the test to be used in non-construction cases, then considered the test to be used in construction cases. NRS 616B.603(3) provides that the provisions of NRS 616B.603 do not apply to principal contractors licensed under NRS chapter 624. Based upon NRS 616B.603(3), and building upon our earlier decision in *Oliver,* we established the following test for determining immunity in construction cases:

> [I]f the defendant in a construction case is *not* a principal contractor licensed pursuant to NRS chapter 624, or is *not* working pursuant to a construction agreement with such a licensed principal contractor, the *Meers* test must be applied to determine immunity. On the other hand, if the defendant in a construction case is a principal contractor licensed pursuant to NRS chapter 624, or is a licensed contractor working pursuant to a construction agreement with a licensed principal contractor, and the defendant is performing part of the construction work for which it is licensed when the injury occurs, that contractor is immune from further suit as a matter of law. No further factual analysis is necessary.[51]

Upon further reflection, we conclude that our articulation in *Tucker* of the test to be applied in construction cases is not as clear as we intended it to be. The test does not plainly encompass landowners who are not themselves contractors, but who hire licensed general contractors to construct improvements. Here, because the Rio is not a principal contractor licensed pursuant to

---

[50]*See* NRS 616B.603(1); *Meers,* 101 Nev. at 286, 701 P.2d at 1007-08.

[51]113 Nev. at 1357, 961 P.2d at 1032 (footnotes omitted).

NRS chapter 624, and is not a licensed contractor working pursuant to a construction agreement with such a licensed principal contractor, *Tucker* would seem to require application of the *Meers* test to determine immunity.

We conclude, however, that broad application of the *Meers* test is not mandated by the NIIA in construction cases—despite the fact that NRS 616B.603(3) does not expressly exempt landowners that retain licensed principal contractors. We therefore modify *Tucker* to clarify that if the defendant in a construction case is a landowner that has contracted with a licensed principal contractor, the landowner is immune from suit as a matter of law for industrial injuries sustained during performance of the construction contract.

Strong policy considerations support this conclusion. First, workers' compensation coverage "should equally protect the property owner who, in hiring the contractor, is indirectly paying for the cost of such coverage, which the contractor presumably has calculated into the contract price."[52] Since the principal contractor is required by the NIIA to ensure that all the construction workers have workers' compensation coverage,[53] requiring the property owner to duplicate that coverage or risk suit in case of injuries is unnecessary as well as unreasonably costly. Further, failure to immunize property owners from suits by workers injured while constructing property improvements places commercial property owners at greater monetary risk than if their own employees performed the tasks.[54] Finally, property owners without construction expertise should be encouraged to retain qualified general contractors who are "in a better position to reduce the risks of injury" because they have "more knowledge and expertise . . . with respect to the dangers that normally arise during the course of the contractor's normal work routine."[55]

In addition, this interpretation of the NIIA comports with the overall purpose of the Act—to ensure compensation for injured employees at reasonable cost to employers, with a mutual renunciation of common law rights and defenses—and with the legislative declaration that the Act must be interpreted and construed neutrally, so that neither employers nor employees are favored

---

[52]*Privette v. Superior Court,* 854 P.2d 721, 728 (Cal. 1993); *see also Antonini,* 94 Nev. at 19, 573 P.2d at 1189 (noting that a labor broker's industrial insurance costs will ultimately be borne by the customer-contractee using the laborers).

[53]*See* NRS 616A.210(1); NRS 616B.612(1).

[54]*See Peone v. Regulus Stud Mills, Inc.,* 744 P.2d 102, 106 (Idaho 1987); *see also Frith,* 92 Nev. at 453, 552 P.2d at 341.

[55]*Peone,* 744 P.2d at 107.

over the other.[56] The Rio, by hiring a licensed principal contractor, effectively provided and secured compensation for Harris and all the other construction employees and can fairly be deemed a statutory employer entitled to statutory immunity,[57] without incurring separate liability for providing industrial insurance coverage.[58] The general contractor is statutorily responsible for ensuring that all the construction employees are covered,[59] and may be sued by injured workers who are not covered,[60] but can factor the costs of complying with this requirement into the construction agreement. Harris and the other workers are guaranteed compensation for any industrial injuries incurred during the construction project, and they have recourse against the general contractor if workers' compensation is not provided for them.[61]

Finally, while application of the *Meers* test in this case to determine immunity would not necessarily lead to a different result, we are confident that the Legislature never intended for it to apply in circumstances like these. *Meers,* a non-construction case, strongly implied that the normal work test it was adopting to determine immunity would apply only outside the construction field.[62] *Meers* applied the normal work test to determine whether a telephone company that sub-contracted elevator maintenance for its office building to an independent company was the subcontractor's statutory employer. Noting that the "normal work" test had often been applied in cases involving sub-contracted maintenance activities, *Meers* concluded that the specialized, subcontracted elevator maintenance work was not part of the telephone company's normal business, and thus the telephone company was not the independent maintenance company's statutory employer.[63]

While *Meers* and NRS 616B.603 address the employment relationship between independent enterprises that contract with each other, like the telephone company and the elevator maintenance company, they do not address the relationship at issue in this case. The relationship of one independent enterprise with another that contracts to perform specialty work is different from the relationship of a property owner with a general contractor that contracts to construct property improvements. In contrast to the two inde-

---

[56]*See* NRS 616A.010.

[57]*See* NRS 616B.612.

[58]*See* NRS 616B.642.

[59]*See* NRS 616A.210(1); NRS 616B.612(1).

[60]*See* NRS 616B.636.

[61]*Id.*

[62]101 Nev. at 285 n.3, 701 P.2d at 1007 n.3.

[63]*Id.* at 286, 701 P.2d at 1007-08.

pendent enterprises conducting separate businesses, the property owner and general contractor can more accurately be described as dependent enterprises conducting a single business: real property development.

The *Meers* test is not well-suited for determining immunity in this kind of construction setting, and by specifying that the provisions of NRS 616B.603 do not apply to licensed principal contractors,[64] we believe the Legislature manifested its intent that the *Meers* test not be used to determine immunity in circumstances like these. Instead, under the *Tucker* test as modified herein, if the defendant in a construction case is a property owner that has contracted with a licensed general contractor for property improvements, and where the contract requires compliance with the NIIA, the property owner is immune from suit as a matter of law for industrial injuries sustained during performance of the construction contract.

## CONCLUSION

Were we to agree with Harris that the Rio is not immune from liability in this case, our decision would necessarily provide an incentive for inexperienced owners to construct their own property improvements in order to immunize themselves from common law liability, or require them to duplicate workers' compensation coverage at additional and unreasonable expense. Double coverage would not benefit construction employees, who are precluded by the NIIA from double recovery. We believe that the Legislature did not intend such a result, and that the NIIA does not mandate it.

Because the Rio stands in the shoes of its licensed general contractor for purposes of NIIA immunity, we hereby affirm the judgment of the district court.[65]

YOUNG, SHEARING, AGOSTI and LEAVITT, JJ., concur.

ROSE, J., concurring:

I concur in the majority opinion and believe it provides a clear and needed analysis of the law regarding immunity under the Nevada Industrial Insurance Act. However, I do want to note that, in my opinion, this court erred a long time ago in rejecting the dual capacity doctrine, and I would be willing to recognize it in the appropriate case.

---

[64] NRS 616B.603(3)(a).

[65] THE HONORABLE NANCY A. BECKER, Justice, did not participate in the decision of this matter.

As we explained in *Noland v. Westinghouse,*

> This theory, known as the "dual capacity doctrine", has been defined in the following terms:
>
> [A]n employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.[1]

In *Noland,* an employee for a subcontractor was injured when an elevator installed on the construction site by Westinghouse, another subcontractor, free-fell a number of floors. Noland claimed that his suit against Westinghouse was not barred by immunity because Westinghouse was not only acting as a subcontractor, but also as the manufacturer, seller, installer, and maintainer of the elevator in question. I believe this Court erred in approving the dismissal of Noland's strict liability claims against Westinghouse and should have recognized the dual capacity in which Westinghouse was serving.

Needless to say, instances such as the one presented in the *Noland* case would constitute rare exceptions to the general immunity granted contractors and property owners under our industrial insurance law. In the case at issue, for instance, Harris's claims asserting an independent duty on the Rio Hotel are inextricably connected to the construction project and have no separate factual basis to support an independent duty. Accordingly, the dual capacity doctrine would not be of any benefit to Harris even if we did recognize it.

---

[1]*Noland v. Westinghouse Elec. Corp.,* 97 Nev. 268, 269 n.1, 628 P.2d 1123, 1125 n.1 (1981) (citations omitted).