Gibbons, J.,
with whom Becker, J., agrees, concurring in part and dissenting in part:
I agree with the majority’s retreat from Tucker v. Action Equipment and Scaffold Co.’s “construction versus nonconstruction” analysis.[1] While I also agree with the majority’s discussion of the scope of property owner immunity under Harris v. Rio Hotel & Casino, Inc. ,[2]1 would not reach that issue in this instance because the underlying case is not a matter to which Harris was intended to apply.
To explain, it is helpful to revisit the majority’s analysis of NBA immunity’s history. As noted there, under NRS 616A.210(1), *1226 principal contractors are treated differently than other statutory employers because they are held responsible for providing industrial insurance coverage not only to their direct employees, but also to their indirect employees — that is, to the employees of their subcontractors and independent contractors. In return, the scope of principal contractors’ immunity is broader as well — they are immune from suits brought on account of the industrial injuries of their subcontractors’ and independent contractors’ employees. This concept, as the majority points out, was the impetus for distinguishing, in cases involving the statutory relationship between multiple contractors under prior law, matters concerning work on “construction-type” projects from matters involving other types of work.
Moreover, this concept was also applied in Harris as a basis for extended NHA immunity to property owners who hired licensed principal contractors. As the majority reiterates, Harris’s conclusion that property owners are entitled to NHA immunity primarily stems from the interplay between policies underlining two statutes: NRS 616A.210(1) and NRS 616B.603.
First, Harris recognizes that principal contractors are required, under NRS 616A.210(1), to provide industrial insurance coverage for “all the workers on [a] project”[3] and consequently should be immune from suits based on those workers’ covered injuries. According to Harris, because a principal contractor, at least theoretically, incurs additional costs in providing such extended coverage, which it then passes on to the property owner, the property owner should, like the principal contractor, enjoy corresponding immunity privileges.
Second, as the majority explains, Harris relies on NRS 616B.603’s somewhat preferential treatment of NRS Chapter 624-licensed principal contractors for the proposition that an inferred NIIA policy exists to encourage property owners to hire such licensed principal contractors, thereby reducing risk and ensuring industrial insurance coverage.
When read together, these two bases for granting property owners NHA immunity indicate that such immunity is available only to property owners who hire principal contractors responsible for providing industrial insurance coverage to indirect employees as part of their work on a single, overarching project. And when the statute defining “principal contractor” (NRS 616A.285) is read in conjunction with the two statutes on which these bases are premised, as it must be,[4] it becomes apparent that the term “prin *1227 cipal contractor” does not encompass an entity, that, like Commercial Consulting, is the only contractor involved in a project.
NRS 616A.285 defines “principal contractor” as a person who (or an entity that),
1. Coordinates all the work on an entire project;
2. Contracts to complete an entire project;
3. Contracts for the services of any subcontractor or independent contractor; or
4. Is responsible for payment to any contracted subcontractors or independent contractors.
Clearly the third and fourth descriptions, providing that a “principal contractor” is one who contracts for the services of, or is obligated to pay, subcontractors or independent contractors, include the notion that a principal contractor is one who is statutorily responsible for providing industrial insurance coverage to indirect employees. The first and second descriptions, however, involve someone who “coordinates all the work on” or “contracts to complete” “an entire project,” and “entire” may reasonably be interpreted in at least two different ways. That term may mean something having multiple elements or parts, of which none of those elements or parts is left out,[5] or in contrast, “consisting of one piece.’ ’[6]
Even though the term is ambiguous,[7] the meaning that the Legislature intended the term to bear, as it is used in these two descriptions, can be clearly derived from the surrounding language and statutory scheme.[8] First, by using the modifier “entire,” the Legislature unmistakably meant something more than a “project” in general.[9] Next, the first description uses “entire project” with the terms “coordinates” “all” the work. Both of those terms’ plain meanings necessarily incorporate the idea that more than one person is working on the project.[10] Thus, “entire project” must *1228 mean a project on which more than one person is working. Although several persons directly employed by one contractor could arguably fall within this description, when read in conjunction with the NIIA provisions governing a principal contractor’s extended coverage responsibilities, it seems clear that, under any one of NRS 616A.285’s four descriptions, a “principal contractor” is an entity that is responsible for providing coverage to workers on a project even though those workers are merely its indirect statutory employees.
Here, as Commercial Consulting did not contract to complete an “entire project,” that is, it was not responsible for providing coverage to workers who were merely its indirect statutory employees, it is not a principal contractor. Accordingly, because Silver State Disposal did not contract with a principal contractor, it is not entitled to property owner immunity, as set forth in Harris.
As Harris suggests, property owner immunity was meant to apply only to owners who contract with a licensed principal contractor to complete a “construction-type” project, in which the expanded costs are then passed on to the property owner, who benefits by reducing risk and obtaining assurance of industrial insurance coverage. Thus, while I appreciate the majority’s attempt to clarify a convoluted concept, in so doing, the court may only work with the tools that the Legislature has set forth. Here, the Legislature has defined “principal contractor” in a certain way, and it is not up to the court to redefine that term so that it accords with the judiciary’s theory of property owner immunity. Accordingly, I conclude that Silver State Disposal, as a property owner that did not hire a licensed principal contractor, is not entitled to NIIA immunity. I would reverse the district court’s summary judgment and remand this matter to the district court for further proceedings.

 113 Nev. 1349, 1356, 951 P.2d 1027, 1031 (1997).

 117 Nev. 482, 25 P.3d 206 (2001).

 Id. at 487, 25 P.3d at 210.

 See Diamond v. Swick, 117 Nev. 671, 676, 28 P.3d 1087, 1090 (2001) (recognizing that, when interpreting a statute, a court should consider multiple legislative provisions as a whole).

 Merriam Webster’s Collegiate Dictionary 387 (10th ed. 1997) (definition 1).

 Merriam Webster’s Collegiate Dictionary 387 (10th ed. 1997) (definition 3).

 See McKay v. Bd. of Supervisors, 102 Nev. 644, 648-49, 730 P.2d 438, 441-42 (1986) (explaining that this court will look beyond a statute’s plain language only when that language is ambiguous, meaning that it is susceptible to more than one reasonable interpretation).

 Diamond, 117 Nev. at 676, 28 P.3d at 1090 (explaining that, in interpreting a statute, multiple legislative provisions should be viewed together and other words and phrases used in the statute and its separate subsections may be considered in determining the meaning and purpose of the statute).

 Id. (noting that a statute should be read to give all of its parts their literal meanings).

 Merriam Webster’s Collegiate Dictionary 255 (10th ed. 1997) (noting that “coordinate” means “harmonize”).